JAMES J. HUNTER, CITIZEN AND TAXPAYER OF PALM BEACH COUNTY, FLORIDA, *Appellant*, v. JAMES M. OWENS, AS TAX ASSESSOR OF PALM BEACH COUNTY, FLORIDA; T. J. CAMPBELL, AS TAX COLLECTOR OF PALM BEACH COUNTY, FLORIDA, AND G. S. CHILD, C. A. BARNETT, E. W. BUNKER, W. K. OSBORNE, C. C. MAST AND A. E. PARKER, AS MEMBERS OF THE BOARD OF COMMISSIONERS OF SOUTH LAKE WORTH INLET DISTRICT, *Appellees*.

## Opinion Filed December 8, 1920.

1. In the exercise of its inherent sovereign powers, the State may impose taxes to be used for a governmental purpose, and the only limitations imposed are those contained in the Federal and State Constitutions, designed to protect personal and property rights against arbitrary and oppressive exertions of governmental power.

2. The extent of a taxing unit for a public purpose may be confined to a designated district or subdivision that may be or whose inhabitants may be directly and peculiarly benefited by the application of the tax money to the purpose contemplated.

3. The object of a tax may be a matter designed to conserve the public health, comfort and convenience of the inhabitants and others in the particular community, and the mere fact that persons who do not share the tax burden may also be benefited by the undertaking, does not affect the governmental power. It is not practicable or contemplated that public benefits shall be shared only by those who bear the burden thereof.

4. The validity of a statute exerting the police power does not depend upon the absolute assurance that the purpose designed can in fact be or will most probably be fully accomplished as contemplated, or upon the certainty that it will best conserve the purpose intended or that the purpose designed is necessary or expedient for the general welfare.

5. Matters of policy, expediency and wisdom are determined by the enactment of statutes; and their invalidity is dependent only upon actual conflicts with organic law.

6. Where a statute levying a tax, in terms or in effect, states that it is for the purpose of conserving the public health, comfort and convenience, it may be sustained on that ground, if otherwise valid, unless it clearly appears from the act itself or from a consideration of the circumstances and conditions within which it is to operate, that the law in reality has no fair relation to the public purpose stated or manifestly intended, or that it in effect violates organic law while superficially appearing to serve a lawful public purpose.

7. Where a statute is not clearly violative of organic law in its expressed terms and legal effect, or its manifest purpose, it will not be held inoperative as in conflict with organic law merely because it may not be constitutionally applied under given conditions or merely because it is doubtful whether it will be as efficacious as was apparently contemplated, where circumstances are conceivable within which the law may validly operate or where its efficacy as intended may be realized in the course of human events.

8. In testing the validity of a statute with reference to the facts and circumstances upon which it is to operate, the validity of the statutes does not depend upon the preponderance of evidentiary considerations; but the statute stands unless it conclusively appears that there are or can be no conceivable circumstances upon which it can validly operate, or that under no circumstances can it operate or be effective to accomplish the intended purpose, without violating organic rights.

9. The propriety of action taken under a statute is subject to judicial review.

10. While under the Constitution "no tax shall be levied for the benefit of any chartered company of this State," (Sec. 7, Art. IX), yet if a public improvement that is afforded by tax levies, does merely incidentally benefit private corporations

along with other persons, the Constitution is not violated in levying the tax for the public purpose, for the law contemplates that corporations shall participate in the burdens and benefits of taxations within appropriate limitations.

11. Chapter 7080, Acts of 1915, is not on its face an arbitrary exertion of governmental power oppressive of private rights; and it does not appear that its due operation will violate organic law. Illegality or abuse of authority in applying the statute may be remedied in due course of law.

12. The wisdom, necessity, expediency, feasibility and probable success of a governmental statutory project are not subject to judicial review, where the statute is not clearly a violation or evasion of organic law and has substantial basis in a lawful public purpose within the scope of the police power.

An Appeal from the Circuit Court for Palm Beach County; E. B. Donnell, Judge.

Decree affirmed.

C. D. Abbott, for Appellant;

E. J. L'Engle and P. L. Gaskins, for Appellees.

## STATEMENT.

Chapter 7080, Acts of 1915, creates and incorporates "a Special Taxing District in Palm Beach County, Florida, to be known as 'South Lake Worth Inlet District' embracing" stated areas, and provides that the governing body of said South Lake Worth Inlet District shall consist of six persons, qualified electors of said District, who shall be known as and designated by "The Board of Commissioners of South Lake Worth Inlet District," and who shall be elected as provided for in this Act.

It is also provided, Sec. 5: "That said Board is hereby authorized and empowered to construct and thereafter to maintain an inlet or waterway connecting the waters of Lake Worth with the Atlantic Ocean, at a convenient and proper place within said district, and to do all acts and things proper, necessary or convenient for that purpose and in that connection. That the opening, cutting and maintenance of said inlet or waterway at some point within the District between Lake Worth and the Atlantic Ocean is hereby found and declared to be necessary for the maintenance of the health of the inhabitants of the territory embraced in said district, and for the convenience, comfort and welfare of said district and the inhabitants thereof. That the location of said inlet or waterway shall be determined by said Board upon the approval and recommendation of the Chief Engineer of said Board. In determining the location for said inlet or waterway, due consideration shall be given by said Board to the following:

"(a) The kind and nature of material which will be encountered in excavating for the foundation and in removing the material preparatory to the construction of said inlet, and the cost of the work to be done in connection therewith.

. "(b) The natural depth of water on both the Atlantic Ocean and Lake Worth ends of said proposed inlet or waterway, as affecting the future maintenance of the channel and the efficiency and operation of said waterway.

"(c) The convenience which will result to the inhabitants of said district in using said inlet or waterway.

"(d) All other features which from an engineering or economic standpoint should be considered as having weight in determining the exact location of said inlet or waterway.

"If reasonable doubt exists in the mind of said Chief Engineer, or of all or any members of said Board, with regard to the location of said inlet or waterway, said Chief Engineer, with the approval and under the directions of said Board, shall employ a consulting engineer, who, with said Chief Engineer, shall make and file with said Board a joint report recommending a location of said inlet or waterway, and the findings in such report, if approved by said Board, shall fix the location of said inlet or waterway. Said Board shall have the sole and final power to determine the location of said canal or waterway.

"Before any construction work upon said inlet shall be undertaken, it shall be the duty of said Chief Engineer to prepare and submit to said Board a plan showing in detail a method to be employed in the construction of said inlet or waterway and providing for full and complete protection to adjacent property from any injury or damage which might follow as a result of the construction of said inlet or waterway. Said plan shall thereafter be submitted to and approved by a competent consulting engineer thoroughly versed in works of this nature, and when so adopted and approved shall be adhered to in the construction work upon such inlet or waterway, except in case it shall appear desirable as the work advances to modify said plan in order to further insure permanency in the location of said inlet or waterway and protection to the adjacent property, then a modification of said plan to accomplish said purpose may be permitted and regularly incorporated in said plan after having been approved by said consulting engineer and adopted by said Board.

"Provided, further, that for any damage or injury occasioned or occurring to private property by washing, overflowing of lands from other cause, resulting from con-

structing of such inlet or the opening thereof, the owner of such property shall have the right to maintain and prosecute any appropriate action at law or in equity, against such Inlet District, for such damage as may have resulted therefrom.

Sec. 8. "That said Board is hereby authorized and empowered to levy upon all of the real and personal taxable property in said district a special tax not exceeding ten (10) mills on the dollar for the year 1916, and not exceeding ten (10) mills on the dollar for each and every year thereafter, to be used solely for the purposes authorized and prescribed by this Act. Said levy shall be made each year, not later than the first day of June of each year by resolution of said Board or a majority thereof, duly entered at large upon its minutes. Certified copies of such resolutions . executed in the name of said Board by its Chairman and Secretary and under its corporate seal shall be made and delivered to the Board of County Commissioners of Palm Beach County and to the Comptroller of the State of Florida not later than the 15th day of June of each and every year hereafter. It shall be the duty of the County Commissioners of Palm Beach County to order the Assessor of said County to assess and the Collector of said County to collect the amount of taxes so assessed by said Board of County Commissioners of South Lake Worth Inlet District upon all the taxable real and personal property in said district at the rate of taxation adopted by said Board for said year, and included in said resolution, and said levy shall be included in the warrant of the Tax Assessor and attached to the assessment roll of taxes for said County each year. The Tax Assessor shall assess and the Tax Collector shall collect such tax so levied by said Board in the same manner as other taxes are collected and said Tax Collector shall collect and pay

52—Vol. 80

said taxes, within the time and in the manner prescribed by law, to the Treasurer of said Board. It shall be the duty of said Comptroller to assess and levy on all the railroad lines and railroad property and telegraph lines and telegraph property situate in said district the amount of each such levy as in case of other State and County taxes, and to collect the said taxes thereon in the same manner as he is required by law to assess and collect taxes for State and County purposes, and to remit the same to the Treasurer of said Board. All such taxes shall be held by said Treasurer for the credit of said Board and paid out by him as provided herein."

The statute contains numerous other provisions including Sec. 24: "Any clause or section of this Act, which for any reason may be declared invalid, may be eliminated from this Act, and the remaining portion or portions thereof shall be and remain in force and valid as if such invalid clause or section had not been incorporated therein."

Chapter 7081 similarly incorporates "Lake Worth Inlet District" with like powers. The two corporate bodies are designed to effectuate prescribed plans for improving the health, comfort and convenience and welfare of the people of the towns and villages within the districts situated on or near the shores of Lake Worth, which is a long narrow body of water extending nearly thirty miles along the South Atlantic Coast of the State with a strip of land between it and the ocean, and a connecting channel towards the north end of the Lake. Into this lake the sewers of towns empty and a large volume of water is conducted from towards the interior of the peninsular portion of the State where extensive drainage operations are prosecuted.

The improvements contemplated by Chapter 7080 include an inlet between the Atlantic Ocean and the southern portion of Lake Worth to permit a flow of water between the lake and the ocean, the resulting purpose being an improvement in the character of the water in the lake to conserve the public halth and the economic uses of the water for propagating shell fish and for domestic use, and also to provide a passageway between the lake and the ocean for boats used by the residents and others along the southern portions of the lake where the "South Lake Worth Inlet District" is formed. The operations in the "Lake Worth Inlet District" under Chapter 7081 are towards the northern portion of the lake.

In an amended bill of complaint brought by James J. Hunter as a citizen and taxpayer on real estate in the district against the Board of Commissioners of South Lake Worth Inlet District, and the Tax Assessor and Tax Collector of Palm Beach County, it is in substance alleged that said Board "should not be permitted to exercise the powers and privileges granted to them and each of them by said Chapter 7080, Laws of Florida, and that said Board of Commissioners particularly should not be permitted to exercise the powers granted and conferred on them by said Chapter 7080, Laws of Florida, for the following reasons, to-wit:

"(a)   That said Act, Chapter 7080, Laws of Florida, Acts 1915, authorizes the construction of an inlet connecting the waters of Lake Worth with the Atlantic Ocean by and under the direction, supervision and management of the said Board of Commissioners, aforesaid, and their successors, and provides that the cost of constructing and maintaining such inlet shall be borne entirely by the special district mentioned in said act and

designated as the South Lake Worth Inlet District, and not by the people of Palm Beach County or by the people of the State of Florida at large.

"(b)    That said Board of Commissioners by the terms of said act are authorized and empowered to borrow money and to issue negotiable promissory notes, bonds, or other evidences of indebtedness therefor to enable them to carry out the terms and provisions of said act, and no limitation is placed by the terms of said act upon the amount of money which said Board of Commissioners may borrow on such promissory notes, bonds or other evidences of indebtedness except as to the amount of bonds as hereinafter set forth; that the opening, cutting and maintenance of said inlet or water road at some point within said district is not necessary for the maintenance of the health of the inhabitants of said territory embraced in said district and for the comfort, convenience and welfare of said district and the inhabitants thereof.

"(c)    That said Board is authorized by said act to clean out, straighten, widen, change the course of or deepen any water course, or natural stream or body of water in said district that may be deemed necessary by said Board to facilitate the opening and maintenance of the canal, inlet or water way between the said Lake Worth and the Atlantic Ocean, and to construct and maintain canals, ditches, levees, etc., deemed by said board to be necessary to preserve and maintain the works of said district, thereby placing the power in the hands of said board to tax the people of the said taxing district aforesaid for the maintenance of canals and ditches heretofore constructed by private corporations for drainage or for other purposes, and thereby to place a lien on all property in said district for the purpose of maintaining ditches, canals and

waterways heretofore constructed for drainage or other purposes, by private corporations or others, which in the opinion of said board may be necessary to protect said inlet sought to be constructed to connect the waters of said Lake Worth with the waters of the Atlantic Ocean.

"(d)   That by the terms of said act said board is authorized to issue bonds to the amount of one hundred thousand dollars, provided the same shall be approved by an affirmative vote of a majority of the qualified electors residing in said special taxing district, the proceeds arising from the sale of said bonds to be used by said board in constructing the canal or inlet connecting the waters of Lake Worth with the waters of the Atlantic Ocean, or any other work carried on by said board, without fixing a minimum price at which said bonds may be sold, thereby giving to said board the power and authority to negotiate said bonds at a ruinous discount and causing in effect, the people of said district to pay interest on said bonds at a usurious rate.

"(e)   That while by the terms of said act, the inlet or canal connecting the waters of Lake Worth with the waters of the Atlantic Ocean, as contemplated thereby, purports to be for the benefit of the people in said special taxing district and for the purpose of maintaining the health, etc., of said district, the provisions thereof were intended to be and is in effect really for the benefit of the private corporation known as The Palm Beach Farms Company in this, that the said Palm Beach Farms Company has heretofore constructed a canal system for the drainage of lands owned by said company and lying west of Lake Worth and partly included in said special taxing district, and the waters drained from said area in which said private system of canals has been constructed by

said Palm Beach Farms Company has in great part, emptied into the waters of Lake Worth through the Boynton and Palm Beach Canals, and such drainage has tended to deepen the water at the south end of Lake Worth and thereby made lands of the riparian owners at said south end of Lake Worth liable to overflow during storm seasons and thereby make said Palm Beach Farms Company liable to such riparian owners for the damage or injury caused by such overflow, and that said act is intended to cause such condition to be abated at the expense of the people of said special taxing district and not at the expense of the said Palm Beach Farms Company the private corporation which in fact created such condition and should therefore be required to furnish the necessary outlet to maintain the waters of Lake Worth at their normal level the said act therefore is class legislation.

"(f)    That the Constitution of the State of Florida does not empower the legislature to enact a statute authorizing a special tax levy for the purpose of constructing canals or inlets, but on the contrary such power is limited to the levy of taxes for State, County and Municipal purposes only, and that by the operation of statute your orator will be deprived of his property without due process of law in violation of the Constitution, of the enacted statute and by the State of Florida.

"(g)    That there is an unauthorized delegation of power to said board of commissioners, in the relation to the levy of taxes upon the real and personal property embraced within said special taxing district.

"(h)    That while the amount of bonds issuable by said board is limited to one hundred thousand dollars, and millage levied upon the real and personal property embraced within said special taxing district is limited to ten

mills, in each year, still the authority of said board by the terms of said act, to borrow money upon its promissory notes is practically unlimited and thus said board would have the authority to create a floating debt of such amount as would require a levy of ten mills taxes for an unlimited period of time, thereby creating a perpetual indebtedness upon the taxpayers of said special taxing district.

"(i) That the purposes for which said board was created, to-wit, the construction of a canal or inlet from the said Lake Worth to the Atlantic Ocean is impossible of completion, for the reason that there is already an inlet connecting the waters of Lake Worth, which is a body of water about thirty miles long and one-half mile wide with an average depth of about ten feet, with the waters of the Atlantic Ocean, which said inlet is only about twenty miles north of the site of the proposed site of the canal or inlet contemplated by said board of commissioners, and the effect of the construction of another inlet from the waters of Lake Worth, to the waters of the Atlantic Ocean would be to close either the present inlet or the inlet contemplated by said board of commissioners, and the government engineer in charge of the waterways of the State of Florida, Major Ladue, your orator is informed and believes and therefore alleges has stated that the War Department of the Government of the United States will not permit the construction of the canal or inlet contemplated by said board of commissioners."

It is further alleged that the Board of Commissioners have been by the courts restrained from exercising the powers conferred by the statute; that the terms of the Commissioners have expired; that all the money collected

by the Tax Collector on account of the special tax under the statute is now held by him; that unless restrained the Tax Assessor and Tax Collector will assess and collect or sell for non-payment of further taxes under the statute. The prayer is that the taxes so collected be decreed to be a trust fund for those who paid it in, and that the defendants all be enjoined from further action under the statute.

Demurrers to the bill of complaint were overruled.

An answer put in issue many of the material allegations of fact contained in the bill of complaint, and includes the following:

"The land on the shores or banks of Lake Worth is to a large extent occupied by towns and suburban residences and farms, and a considerable population, aggregating approximately ............. persons, live on or near the shores of said lake, including the cities and towns of Palm Beach, West Palm Beach, Lake Worth and Boynton. The sewerage from these cities, towns and residences is and has been for many years to a large extent deposited and discharged into said Lake Worth, and as a result thereof the waters of said lake have been rendered impure, and, in the opinion of many persons, unwholesome and unsanitary. By reason of the fact that the principal tidal outlet of said Lake Worth is through the inlet at the north end thereof, and the fact that said lake is from twenty-three to twenty-four miles long and only about one and a half miles wide on the average, there is and has been no constant flow or current of water from all parts of said lake to or from the Atlantic Ocean, resulting in comparative stagnancy in said lake, which does not sufficiently relieve said lake of the impurities discharged therein by the sewage systems above mentioned."

A replication was filed and voluminous testimony taken.

In the final decree dismissing the bill of complaint the Chancellor specifically found on supporting evidence that the charge made in the bill that the statute was enacted for the benefit of a named private corporation, and therefore violative of the Constitution, was "not sustained by the evidence." The decree also found "that the cutting of the inlet is not necessary for the health of the inhabitants of the district," but that there was evidence that the convenience, comfort and welfare of the district and the inhabitants thereof would be considerably increased by the cutting of the inlet.

An appeal was taken and several matters of law and of fact are argued as showing the statute to be violative of the State and Federal Constitutions.

The statutes of the State relative to general taxation provide:

"The County Assessors of Taxes shall complete the assessment rolls of their respective counties on or before the first Monday in July in every year, on which day such Assessors shall meet with the Board of County Commissioners at the Clerk's office of their respective counties for the purpose of hearing complaints and receiving testimony as to the value of any property, real or personal, as fixed by the County Assessor of Taxes, of perfecting, reviewing and equalizing the assessment, and may continue in session for that purpose from day to day for one week, or as long as shall be necessary. Due notice of such meeting shall be given by publication in a newspaper published in such county, or by posting a notice at the courthouse door, if there be no newspaper published in the county, at least fifteen days before the Board will be in session for the purpose of hearing complaints and receiving testimony as to the value of any property as fixed and assessed by the

County Assessor of Taxes; provided, that the County Commissioners of any county may, if they deem it necessary, extend the time for the completion of such assessment roll and for the purpose of revising and equalizing the assessment, a similar extension, not exceeding thirty days, giving due notice and an opportunity to be heard as to assessment and values as hereinbefore provided. Should the Board increase the value fixed by the County Assessor of Taxes of any real estate or personal property, due notice thereof shall be given to the owner or agent of such property by publication in a newspaper published in such county, or by posting a notice at the courthouse door, if there be no newspaper published in the county, at least fifteen days before the Board will be in session, to hear any reason that such persons may desire to give why the valuation fixed by the Board shall be changed. The Board of County Commissioners shall meet on the first Monday in August or September of each year for the purpose of hearing complaints from owners or agents of any real estate or personal property the value of which shall have been fixed by the Assessor, or changed by them, and for that purpose the Board shall sit as long as it may be necessary." Sec. 23, Chap. 5596, Acts of 1907, Sec. 525, Compiled Laws, 1914.

WHITFIELD, J. (after making the foregoing statement).

—A bill seeking to have declared invalid Chapter 7080, Acts of 1915, on grounds that it violated the State and Federal Constitutions was dismissed and an appeal was taken.

The statute creates "South Lake Worth Inlet District" in Palm Beach County and authorizes a tax not exceeding ten mills on all the taxable property in the district

for the main purpose of constructing an inlet between the southern end of Lake Worth and the Atlantic Ocean, for the expressly stated statutory purpose of "the maintenance of the health of the inhabitants of the territory embraced in said district and for the convenience, comfort and welfare of said district and inhabitants thereof."

In the exercise of its inherent sovereign powers, the State may impose taxes to be used for a governmental purpose, and the only limitations imposed are those contained in the Federal and State Constitutions, designed to protect personal and property rights against arbitrary and oppressive exertions of governmental power. The extent of the taxing unit may be confined to a designated district or subdivision that may be or whose inhabitants may be directly and peculiarly benefited by the application of the tax money to the purpose contemplated. The object may be a matter designed to conserve the public health, comfort and convenience of the inhabitants and others in the particular community, and the mere fact that persons who do not share the tax burden may also be benefited by the undertaking does not affect the governmental power. It is not practicable or contemplated that public benefits shall be shared only by those who bear the burden thereof. The validity of a statute exerting the police power does not depend upon the absolute assurance that the purpose designed can in fact be or will most probably be fully accomplished as contemplated, or upon the certainty that it will best conserve the purpose intended or that the purpose designed is necessary or expedient for the general welfare. Matters of policy, expediency and wisdom are determined by the enactment of statutes; and their validity is dependent only upon actual conflicts with organic law.

Where a statute levying a tax, in terms or in effect, states that it is for the purpose of conserving the public health, comfort and convenience, it may be sustained on that ground, if otherwise valid, unless it clearly appears from the Act itself or from a consideration of the circumstances and conditions within which it is to operate, that the law in reality has no fair relation to the public purpose stated or manifestly intended, or that it in effect violates organic law while superficially appearing to serve a lawful public purpose. Where a statute is not clearly violative of organic law in its expressed terms and legal effect, or its manifest purpose, it will not be held inoperative as in conflict with organic law merely because it may not be constitutionally applied under given conditions or merely because it is doubtful whether it will be as efficacious as was apparently contemplated, where circumstances are conceivable within which the law may validly operate or where its efficiency as intended may be realized in the course of human events. In testing the validity of a statute with reference to the facts and circumstances upon which it is to operate, the validity of the statute does not depend upon the preponderance of evidentiary considerations; but the statute stands unless it conclusively appears that there are or can be no conceivable circumstances upon which it can validly operate or that under no circumstances can it operate or be effective to accomplish the intended purpose, without violating organic rights. The propriety of action taken under the statute is subject to judicial review. While under the Constitution "no tax shall be levied for the benefit of any chartered company of this State," (Sec. 7, Art. IX), yet if a public improvement that is afforded by tax levies does merely incidentally benefit private corporations along with other persons, the Constitution is

not violated in levying the tax for the public purpose, for the law contemplates that corporations shall participate in the burdens and benefits of taxations within appropriate limitations.

It is within the power of the legislature to establish a district of the character here considered as a governmental agency to effect the lawful public purpose of conserving the public health, comfort, convenience and welfare of the district and its inhabitants, and to impose an ad valorem tax therefor.

The statute expressly enacts "that the opening, cutting and maintenance of said inlet or waterway at some point within the District between Lake Worth and the Atlantic Ocean is hereby found and declared to be necessary for the maintenance of the health of the inhabitants of the territory embraced in said district and for the convenience, comfort and welfare of said district and the inhabitants thereof." That the location of said inlet or waterway shall be determined by said Board upon the approval and recommendation of the Chief Engineer of said Board and the methods for making the determinations are outlined in the statute.

It has not been conclusively shown that the health, comfort, convenience and welfare of the "District and the inhabitants thereof," cannot be conserved by the statutory operations, or that the scheme outlined by the statute for making the public improvement is impossible of accomplishment or that the statute will effectuate a purpose to benefit a private corporation.

The evidence does not clearly show that the conditions and circumstances within which the statute must operate will inevitably violate personal or property rights or any

provision of constitutional law. Even if the contemplated benefits may not fully accrue from the expenditures of tax money, the statute is not thereby invalidated.

It does not clearly appear that the operation of the statute will necessarily impose a tax burden without due process of law. The district was formed by the legislature itself. The tax is uniform upon all the taxable property in the district, the maximum being stated in the statute. It cannot exceed ten mills on the dollar and it must be assessed and collected as other property. The county commissioners fix the valuations of all property for purposes of all taxation, after due notice and opportunity to be heard; and the millage cannot exceed the statutory limit. There is a discretion in "The Board of Commissioners of South Lake Worth Inlet District" as to the amount of the tax within the statutory limit; but this is no greater discretion than is given to other officers who levy a tax within fixed limits. This is not an acreage assessment upon property within a district formed by an administrative board, where the amount of the assessment levied by the administrative board should within the statutory limits be fixed only after a hearing as held in Rodman v. Kyle, 76 Fla. 79, 80 South. Rep. 300. The rule applicable here is similar to that announced in Houck v. Little River Drainage Dist. 239 U. S. 254, 36 Sup. Ct. Rep. 58. See also Stockton v. Powell, 29 Fla. 1, 10 South. Rep. 688; Board of Com'rs. of Escambia County v. Board of Pilot Com'rs of Port of Pensacola, 52 Fla. 197, 42 South. Rep. 697; Fallbrook Irrigation Dist. v. Bradley, 164 U. S. 112, 17 Sup. Ct. Rep. 56. See also L. R. A. 1916-E 5.

The statute is not on its face an arbitrary exertion of governmental power oppressive of private rights; and it

does not appear that its due operation will violate organic law. Illegality or abuse of authority in applying the statute may be remedied in due course of law.

As the taxes are to be assessed and collected as other taxes and as the general law provides for an opportunity to be heard before the assessment becomes final, there is no lack of due process of law in this particular.

Questions of benefit and of unlawful burdens do not arise in this case as the tax is uniform for a public purpose within the power of the legislature to prescribe. The wisdom, necessity, expediency, feasibility and probable success of the project are not subject to judicial review, where the statute is not clearly a violation or evasion of organic law with no substantial basis in a lawful public purpose within the scope of the police power. The broad powers conferred upon the local board may be unwise, but they are not shown to be violative of organic law, or that their exercise will inevitably invade personal or property rights that are secured by the constitution.

The statute has been amended providing for notice before the amount of the tax levy not limited by the amendment is certified for assessment and collection. Special Acts 1919, p. 157. The effect of this amendment has not been considered.

Decree affirmed.

BROWNE, C. J., AND TAYLOR, ELLIS AND WEST, J. J., concur.