731 So.2d 754 (1999)
Robert L. MOORE, Appellant,
v.
PALM BEACH COUNTY, a Political Subdivision of the State of Florida, James McCartney Wearn, P.A., Dorothy Lindros, Nowlen, Holt & Minor, P.A., Microfilms Management Corp., James McCartney Wearn, and State Board of Administration of the State of Florida, Appellees.
James McCartney Wearn, P.A., James McCartney Wearn, and Dorothy Lindros, Appellants,
v.
Palm Beach County, a Political Subdivision of the State of Florida, Appellee.
Nos. 97-2915, 97-3147.
District Court of Appeal of Florida, Fourth District.
April 7, 1999.
Rehearing Denied June 1, 1999.
*755 Rod Tennyson of Law Office of Rod Tennyson, P.A., West Palm Beach, and I. Jeffrey Pheterson of the Law Office of Schmidt & Pheterson, Boca Raton, for Appellant-Robert L. Moore.
Paul F. King, Assistant County Attorney, and Leonard Burger, Assistant County Attorney, West Palm Beach for Appellee-Palm Beach County.
Scott W. Zappollo and David A. Acton and of the Law Office of Watterson, Hyland & Klett, P.A., Palm Beach Gardens, for James McCartney Wearn, P.A., James McCartney Wearn and Dorothy Lindros.
*756 TAYLOR, J.
In this consolidated appeal, Robert L. Moore, as intervener and class representative of taxpayers of the former South Lake Worth Inlet District, appeals from final summary judgment in favor of Palm Beach County. James McCartney Wearn, P.A., James Wearn and Dorothy Lindros, who were escrow agents of the District, also appeal the judgment. Appellants contend that the trial court erred in determining that the District's governing board lacked authority to refund approximately $2.6 million in reserve monies to the former District's taxpayers and to enter into tax escrow agreements to accomplish the refund following legislative enactments abolishing the District. We agree with the trial judge's well-reasoned order and affirm the final judgment.
In 1915, the Florida Legislature established the South Lake Worth Inlet District (the "District") to construct and maintain an inlet to connect the waters of Lake Worth with the Atlantic Ocean and to clarify the waters of southern Lake Worth and adjacent waterways and canals, which had become polluted by the drainage of inland areas. Chapter 7080, Laws of Florida, as amended, empowered the District to levy and collect taxes for those purposes authorized in the statute. The District built and maintained the Boynton Inlet. It later created a reserve fund to pay for inlet repairs and replacements in the event of a catastrophic hurricane. By 1996 the District had amassed a reserve fund of $2.6 million.
In 1996, the Florida Legislature adopted chapter 96-466, Laws of Florida, abolishing the District and turning over its functions to Palm Beach County ("The County"). This special act provided that all District property would vest in the County as of May 24, 1996, the effective date of the law. Further, it restricted the County's use of the District's assets to the operation, maintenance and improvement of the Boynton Inlet and adjacent property and prohibited expenditure of the District's assets for any purposes other than those contemplated in Chapter 7080, Law of Florida, as amended. Moreover, section 189.4045(2), Florida Statutes, provided that the "dissolution of a special district government shall transfer the title to all property owned by the preexisting special district government to the local general-purpose government."
On May 20, 1996, just a few days before the District's dissolution, the District's governing body passed resolutions authorizing the execution of five escrow agreements providing for disbursement of the $2.6 million reserve funds to the District taxpayers. The primary escrow agreement (the "Tax Escrow") was with Appellant James McCartney Wearn, P.A. ("Wearn, P.A."). Under that agreement, Wearn. P.A. was given authority, as escrow agent, to refund the District's $2.6 million held as "excess funds" to District taxpayers and granted absolute discretion in carrying out this refunding process. Four additional escrow agreements ("subsidiary escrow agreements") were executed to implement the tax escrow and provide for secretarial services, auditing services, records copying and storage, and legal services.
On June 7, 1996, Palm Beach County filed a complaint for declaratory relief, seeking to void the tax escrow and subsidiary escrow agreements entered into by the District in its waning days, and to recover the reserve funds being held in State Board of Administration accounts. The County later amended its complaint to add requests for an accounting and a release of District records. On June 24, 1996, the County Commission passed resolution 96-808 to repeal the District's escrow agreements.
Robert Moore, a property owner in the now defunct District, subsequently moved to intervene in the County's declaratory relief action as a class representative of former District taxpayers. His three-count complaint alleged that the county's *757 impairment of the escrow agent's ability to refund taxes was a violation of civil rights; that the county had illegally breached the escrow agreement, and that the taxpayers of the former District had been illegally taxed. By agreed order, the defendants in the County's action were prohibited from accessing the $2.6 million pending a further court order.
The County moved for summary judgment. After reviewing the record and extensive memoranda filed by the parties and finding no material issues of fact in dispute, the trial court entered a final summary judgment in favor of the County. It determined that the tax escrow was void because the attempted tax refund was beyond the District's limited powers. It further found that, even if the District had the power to refund taxes, it could not delegate such power and give unbridled discretion to implement tax refunding to an escrow agent, who was not an elected official responsible to the voters. Additionally, the court found that the tax escrow and subsidiary escrow agreements were invalid as a matter of contract law in that they lacked the necessary elements for formation of escrow agreements. In its final conclusion, the court ruled that, in any event, the tax escrow never became valid because it was never funded. The State Board of Administration did not transfer the $2.6 million reserve fund until May 24, 1996, after the District was abolished. Thus, there was no legal transfer of custody and control over the monies as would be required to effectuate a valid escrow agreement.
Based on the above conclusions, the trial court declared that all property and property rights previously held or owned by the District were owned solely by Palm Beach County and not by the appellees. The court ordered the State Board of Administration to transfer District funds in its possession to an account of the County, and directed the escrow agents to turn over any District property and records in their possession to the County.
We find that the trial court properly determined that the tax escrow and subsidiary escrow agreements entered into by the District to refund reserve monies to the taxpayers were void as beyond the District's limited purposes. We reject appellants' argument that the Act of 1915, which created the District, gave it broad discretion to protect the taxpayers'"best interests" in this way. Section 5 of Chapter 7080 confined the powers of the District's board to construction and maintenance of an inlet or waterway connecting Lake Worth with the Atlantic Ocean. The District was authorized to levy taxes and to perform duties that were necessary and proper only for those purposes. Refunding of previously collected taxes does not come within the authority given the District by the Legislature.
We also agree with the trial court's reasoning that, even assuming, for the sake of argument, that tax refunding was a valid exercise of authority, the escrow agreements herein illegally delegated to the escrow agent absolute discretion regarding fulfillment of the objects contemplated by the Board. Cf. Richey v. Wells, 123 Fla. 284, 166 So. 817 (1936) (Legislature's delegation to a delinquent tax adjustment board of the power to compromise and adjust the amount to be required to be paid for purchase of tax sale certificates constituted illegal delegation of legislative authority).
The class representative counters that, notwithstanding the lower court's determination that the tax escrow agreements were invalid, the District's taxpayers are nevertheless entitled to a refund because they have been unevenly and illegally taxed. In support, he relies on a state constitutional provision requiring that "[A]ll ad valorem taxation shall be at a uniform rate within each taxing unit ..." Article VII, Section 2, Florida Constitution. He reasons that since the District included only 20% of the County's ratables but its services benefitted residents of the *758 entire County, the rate for the District taxpayers exceeded that for the taxpayers of other parts of the county. He further relies on an express legislative finding in the special act abolishing the District, i.e., that the Boynton Inlet benefits all County taxpayers, to buttress his argument that the surplus funds should be refunded to the former District taxpayers.
The trial court initially determined that it lacked subject matter jurisdiction over these unlawful taxation claims, because the Moore appellants failed to timely contest taxes pursuant to section 194.171(2), Florida Statutes. That section requires that actions contesting tax assessments be brought within 60 days of certification of the assessment for collection. The court, however, in the interest of judicial economy, addressed the merits of these claims and found that the arguments relied upon by appellants had been rejected several years ago by the Florida Supreme Court. See Hunter v. Owens, 80 Fla. 812, 86 So. 839 (1920)
In Hunter, the Florida Supreme Court considered whether the legislation creating the District was constitutional and upheld its validity against legal challenges that it was arbitrary and benefitted others who did not pay the tax burden imposed on those property owners within the District. The court held that where a tax is enacted in the interest of public health, comfort and convenience of the inhabitants and others in a particular community, the mere fact that persons who do not share the tax burden may also benefit from the undertaking does not affect the power of the government to impose such a tax. The Hunter court further held that "it is not practicable or contemplated that public benefits shall be shared only by those who bear the burden thereof." Id. at 843.
With respect to the class representative's contention that the constitution requires that taxes be imposed at a uniform rate within each taxing unit, the trial court properly observed that the constitutional provision cited by appellant refers to the application of a common rate to all taxpayers within each taxing unit and does not bear upon variation in rates between taxing units. See W. J. Howey Co. v. Williams, 142 Fla. 415, 195 So. 181, 182 (1940).
We also reject the class representative's argument that the legislative findings in the special act abolishing the District required the County to refund taxes to the District's taxpayers. Although the Florida Legislature, in dissolving the District, did state that the benefits of the Boynton Inlet extended beyond the District's boundaries, under Hunter, the Legislature was nonetheless entitled to continue the District's existence. As early as 1923, in an amendment to Chapter 7080, which created the District, the Florida Legislature acknowledged that the inlet constructed by the District would benefit not only the people of the District but also the people of the entire State of Florida. It stated:
that the said inlet or waterway shall be constructed and maintained for the use of the people of the State of Florida and of the said district; that the opening, cutting, and maintaining of said inlet or waterway ... is hereby found and declared to be a public purpose and to be necessary for the use of shipping and for transportation and for extension of the commerce of the State of Florida and of said district ...
Sec. 3, Chapter 9567., Laws of Florida. In the 1996 special act, the Legislature merely affirmed the the broad public purpose of the District it had created in 1915. We note, also, that under Section 6 of Chapter 96-466, the County is required to continue to use the liquid assets that it inherits from the District for the sole purpose of operating, maintaining and improving the inlet and adjacent property, and may use them for no other purposes than those contemplated in the first place for the District. Nowhere in the legislation does there appear any provision for refund of *759 the taxes validly collected under prior statutory authority. Moreover, the trial judge pointed out, any enactment of the Legislature affecting taxation is prospective only in its application unless legislative intent to the contrary clearly appears. Hausman v. VTSI, Inc., 482 So.2d 428, 430 (Fla. 5th DCA 1985). Here, the legislature made clear provisions for transfer of all District assets to the County with no mention of tax refunds.
In his final point on appeal, the class representative contends that there remained a genuine issue of fact in that the County sought to rescind the escrow agreements upon its incorrect legislative findings that the cost of administering the refunds would exceed the amount available for the refunds. However, the County's motivation in seeking to rescind the escrow agreements was not a basis for the trial court's rulings on summary judgment. Rather, the court determined that the escrow agreements were void and unenforceable. Thus, any argument concerning erroneous projections of the expected costs of the refund through the tax escrow is not relevant to the issue of whether summary judgment was properly granted.
Turning next to the issues raised by Wearn and the other escrow agents in their appeal, we first determine that Lindros' joinder in Wearn's appeal was timely. A party may join an appeal by filing a notice of joinder within ten days of service of the notice of appeal. Fla. R.App. P. 9.360(a).
Wearn and the other escrow agents contend that final summary judgment was improperly granted because issues of material fact remained for determination as to the County's claim that they converted former District funds, books and records and violated public records laws. The final summary judgment, however, did not contain any specific findings on the County's conversion count; it simply ordered that any former District funds that were being held by escrow agents be transferred to the County.
We affirm as to all other issues raised by the escrow agents and find they either lack merit or are rendered moot by our decision upholding the finding of the trial court that the escrow agreements were void, ultra vires acts of the District.
AFFIRMED.
POLEN and GROSS, JJ., concur.