SERVEL v. JAMIESON et al.

(Circuit Court of Appeals, Ninth Circuit.   February 17, 1919.)

No. 3200.

1. TENDER ⊜ᐤ13(1)—SUFFICIENCY—TENDER OF CHECK.
    The tender of a check in payment of money is of no effect, where objection is made to that medium of payment.
2. SALES ⊜ᐤ191—MEDIUM OF PAYMENT—WAIVER.
    The fact that the owners, on signing a contract for the sale of sheep for future delivery, accepted a check for the advance payment, did not bind them to accept a check in final payment.
3. SALES ⊜ᐤ196—MEDIUM OF PAYMENT—WAIVER.
    Where there was evidence tending to show that defendants, on the last day for performance of a contract for the sale of sheep to plaintiff, after the sheep had been weighed, avoided plaintiff's agent, who sought to make payment, until after bank hours, and then refused to accept a check or draft, it was error to direct a verdict in their favor in an action for breach of contract.
4. TENDER ⊜ᐤ5—WAIVER—PREVENTING MAKING OF TENDER.
    A tender is waived where the person to whom it is to be made in any way obstructs or prevents a tender.

In Error to the District Court of the United States for the District of Montana; George M. Borquin, Judge.

Action by Zavier Servel against G. R. Jamieson and Mathieson Murray, partners as Jamieson & Murray.   Judgment for defendants, and plaintiff brings error.   Reversed.

The plaintiff in error brought an action against the defendants in error to recover damages for their failure to deliver sheep in accordance with the terms of a contract made March 14, 1917.   The parties will be named plaintiff and defendants as in the court below.   The contract provided that the defendants should sell and deliver to the plaintiff all their wether lambs produced in the year 1917, delivery to be made between the 25th and the 29th days of September, 1917, exact day to be at the option of the plaintiff, and at certain places named, in the state of Montana.   The plaintiff was to pay therefor the sum of 10 cents per pound.   The plaintiff paid at the date of the contract $3,000 as part of the purchase price, and agreed to pay the remainder "at the time and upon the delivery" of the lambs.   The contract further provided: "And it is further mutually agreed by and between the parties hereto that time is of the essence of this agreement, and that upon the expiration of the time for delivery as herein provided, the rights of said party of the second part [the plaintiff] hereunder shall cease and terminate, and he shall have no right, claim, or interest in or to said sheep after the expiration of said period of time."

One Stitt, as agent for the plaintiff, for the purpose of receiving the lambs and paying therefor, went to Glasgow, Mont., the home of the defendants, on September 25, 1917, and the next day the parties commenced weighing the lambs.   The lambs were weighed at different points, and the work was finally completed at 8 o'clock in the morning of the 29th.   The defendant Jamieson then took Stitt in his automobile to Glasgow, where they arrived at 1 o'clock in the afternoon.   Jamieson then said that Murray was at Nashua and that they should go to Nashua for settlement.   Stitt went to Nashua by train, he understanding that Jamieson was to come by automobile.   Stitt reached Nashua at 2 o'clock and searched for Murray, but he was not there. He thereupon secured an automobile and went back to Glasgow, arriving there at 4 o'clock p. m.   He there met both the defendants on the street, and told them he was ready to settle for the lambs.   Murray asked him how he wanted to pay

⊜ᐤFor other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

for them, and he answered that he would give them a check, to which Murray replied, "If you haven't got the currency, you can't have the lambs, and if you have you can, but we won't accept a check." Stitt told him that he did not have $30,000 with him, but he could get it if it was necessary, and said that he had always bought lambs by check, and had never given currency before. He told them that his check was good, that he would wire his bank and have them guarantee it, and offered to leave the sheep with them until he got the money. He also offered to draw a draft upon Hatcher & Snyder, and stated that they would pay it. He also said that he would get currency as soon as it could be transmitted by wire. The banks were then closed, as it was Saturday. The defendants said that the time was up and that he could not have the lambs.

Stitt offered to prove that he had made arrangements with the bank at Ft. Morgan, Colo., for the payment of any check he might draw on it, and to prove that he would have produced the currency for payment as soon as it could be procured by telegraph from that bank, and that he would have done so, had the defendants not told him that it would be useless, and he offered to prove that that bank had telegraphed its guaranty to pay his check, and that the defendants admitted on Sunday, September 30, that they had received a telegram from the Montana National Bank, at Billings, Mont., guaranteeing the payment of any draft he might draw on Hatcher & Snyder. He also offered to prove that on the 30th he served notice on the defendants that he would procure legal tender on Monday morning as soon as the banks were open, and that he would compensate the defendants for any damage they might suffer by reason of holding the sheep until that time. He further offered to show that it was the custom in all parts of Montana, and in the Northwestern States generally, among sheep men, to pay for their purchase of sheep by means of a check or draft. Objections to all these offers of proof were sustained, and exceptions were taken. The market value of the lambs at that time was 15 cents a pound.

The plaintiff demanded judgment against the defendants for $15,666.20, the difference between the contract price and the value of the lambs at the time when delivery was to be made, and also for the sum of $3,000, which was paid at the time of making the contract. At the conclusion of the plaintiff's testimony the court instructed the jury to return a verdict for the defendants.

F. B. Reynolds, of Billings, Mont., for plaintiff in error.

Norris, Hurd & McKellar and Edwin L. Norris, all of Great Falls, Mont., for defendants in error.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

GILBERT, Circuit Judge (after stating the facts as above). [1, 2] We think that the defendants stood strictly within their right in refusing the check which was tendered by Stitt. It is the well-settled rule that the tender of a check in payment of money is of no effect in cases where objection is made to that medium of payment. 38 Cyc. 146; Volk v. Olsen, 54 Misc. Rep. 227, 104 N. Y. Supp. 415; Rumpf v. Schiff (Sup.) 109 N. Y. Supp. 51; Barbour v. Hickey, 2 App. D. C. 207, 24 L. R. A. 763; Collier v. White, 67 Miss. 133, 6 South. 618; Aldrach v. Light, Power & Ry. Co., 101 S. C. 32, 85 S. E. 164; Moore v. Twin City Ice & Cold Storage Co., 92 Wash. 608, 159 Pac. 779, Ann. Cas. 1918D, 540. Nor should it be held that the defendants, by accepting a check for the payment made at the time of entering into the contract, bound themselves to accept a check at the final performance thereof, or waived their right to demand that the final payment be made in currency. The case is unlike Gunby v. Ingram, 57 Wash. 97, 106 Pac. 495, 36 L. R. A. (N. S.) 232, where a

series of payments of interest on a mortgage had been made by check, and it was held that the tender of a check for another installment was sufficient to prevent the exercise of an option to declare the whole debt due. In the present case the defendants might well accept a check for the first payment, for they parted with no right of possession of the property contracted to be sold, but when it came to the final payment and the delivery of the property to the plaintiff to be taken out of the state, they were entitled to demand that they be paid in money, and not by a check upon a bank in a sister state.

[3, 4] Time was expressly made of the essence of the contract, and by the agreement of the parties the contract was to be fully performed on September 29, 1917. This was not done, but there was testimony tending to prove that on September 29, after the lambs had been weighed at 8 o'clock in the morning, the defendants avoided the plaintiff's agent and delayed meeting him for the final settlement until after 4 o'clock in the afternoon. A tender is waived where the person to whom it is to be made "in any way obstructs or prevents a tender." 38 Cyc. 135; Hunt on Tender, § 52; Schaeffer v. Coldren, 237 Pa. 77, 85 Atl. 98, Ann. Cas. 1914B, 175. In view of these features of the evidence and the plaintiff's offer of proof, from which the jury might have found that, but for such delay, the currency might have been obtained to make payment on that day, we think it was error to direct the jury to return a verdict for the defendants.

The judgment is reversed, and the cause is remanded for a new trial.