### IN THE

# SUPREME COURT OF TENNESSEE

### FOR THE

## WESTERN DIVISION

## APRIL TERM, 1922.

## J. H. FARRIS *v.* W. E. FERGUSON *et al.*\*

### (*Jackson.* April Term, 1922.)

1. **SALES. Time not of essence as regards tender of price.**

Time was not of the essence of a contract of sale between neighboring farmers of a lot of cows to be delivered the next day, so as to require tender of price on that day; there being nothing to indicate that the seller would have suffered any loss, injury, or inconvenience by a day's delay, or that the cows had depreciated in value. (*Post, pp.* 501-506.)

Cases cited and approved: Furlong v. Barnes, 8 R. I., 226; New Jersey Co. v. Nathaniel Wise Co., 55 Misc. Rep., 294.

2. **SALES. Buyer held entitled to time to get cash on seller refusing check.**

Where seller of cows refused checks tendered in payment on day of delivery, the buyers were entitled to time to procure and tender the money, where they had had every reason, from previous dealings, to believe checks would be accepted. (*Post, pp.* 506-510.)

Cases cited and approved: Skinner v. Stone, 144 Ark., 353; Servel v. Jamieson, 255 Fed., 892.

---

\*On right of purchaser to opportunity to pay in cash where tender has been made in other medium, see note in 11 A. L. R. 811.

Farris v. Ferguson.

Cases cited and distinguished: Bass v. White, 65 N. Y., 565; Pickle v. Areble, 4 N. J. Eq., 315.

FROM SHELBY.

Appeal from the Circuit Court of Shelby County to the Court of Civil Appeals, and by *certiorari* to the Court of Civil Appeals from the Supreme Court.—HON. H. W. LAUGHLIN, *Judge.*

RAYMOND O'VALLEY, for plaintiffs.

HOLMES & CANALE, for defendant.

MR. JUSTICE MCKINNEY delivered the opinion of the Court.

W. E. Ferguson and C. D. Ferguson, hereinafter referred to as the plaintiffs, instituted this suit in the circuit court of Shelby county against J. H. Farris, hereinafter referred to as the defendant, to recover damages for the breach of a contract for the sale of twenty milch cows.

There was a judgment for plaintiffs in the circuit court for $200.

Upon appeal the court of civil appeals reversed that judgment and dismissed the suit, and the plaintiffs have brought the case to this court by petition for writ of *certiorari,* and have assigned numerous errors, which question the correctness of the holding of the latter court.

The parties are farmers residing in Shelby county, and the record indicates that they live in the same locality,

some eleven or twelve miles from the city of Memphis. They have been acquainted for fifteen years or longer, and appear to be reputable citizens of their community.

On Monday, March 15, 1920, plaintiffs went to defendant's home and contracted to purchase from him twenty dairy cows for $75 each, seventeen sacks of cow feed at $4 per sack, and the milk on hand at an agreed price at time of delivery.

Plaintiffs paid defendant $25 on the purchase by giving him a check executed by O. M. Meadows for $45, defendant paying them the difference of $20 in money, and executed to them the following receipt:

"March 15, 1920. Received of W. E. Ferguson $25, part payment on cows, to be delivered March 16, 1920, to W. E. Ferguson. [Signed] J. H. Farris."

Early the next morning one of the plaintiffs got in his automobile, drove to the home of defendant, paid him cash for the milk on hand, and stated to him that he would return that afternoon for the cows and the feed, which was satisfactory to the defendant. In the latter part of the afternoon plaintiffs, with some help and a truck, returned to the home of the defendant, loaded the feed into the truck, and tendered to the defendant three or four checks on solvent parties, from whom they had negotiated loans to pay for the cows, but defendant declined to accept said checks, and stated to plaintiffs that they would have to pay him in money by sundown or the trade was off.

Plaintiffs then offered to have the checks indorsed by Mr. Hildebrand, an old reliable merchant in the community, or, if he preferred, they would procure Mr. Hildebrand's check for the entire sum, but both propositions were declined.

At this time the banks had closed for the day, and the record shows that it was twelve miles to the nearest bank. Plaintiffs then stated to defendant that as soon as the bank opened the next morning they would get the money on the checks and bring it to defendant, but this offer was declined, defendant insisting that he must have the money by sundown that day. As soon as the bank opened the next morning, plaintiffs cashed said checks, and returned to the defendant's home, but he was away. That afternoon they found him at home, and offered to pay him the money, but he declined to receive it, saying that the trade was off. The defendant admits that he knew that Mr. Hildebrand's check was good, and several witnesses testified that the defendant told them the next day that he knew the checks tendered him were good, but declined to accept them because he had received a better offer for his cows.

There was no agreement as to how the cows were to be paid for, whether in cash or by check. Neither was there any provision in the receipt, or any verbal agreement, that time was to be of the essence of the contract.

The court of civil appeals was of the opinion that time was of the essence of the contract, and that it was necessary for the plaintiffs to tender the money on the 16th of March, 1920, and, having failed in this, they could not recover.

The general rules covering this question and which are supported by the authorities, are thus stated in 13 Corpus Juris, par. 783, to wit:

"*Time as of Essence of Contract. Common-Law Rule.*— At law, the general rule laid down by many, particularly early, authorities is to the effect that a time stipulated in a contract for its performance is of its essence, unless a

contrary intent appears from the face of the contract; that is to say, if a person promises another to do a certain thing by a certain day in consideration that the latter will do something for him, the thing must be done by the date named or the latter is discharged from his promise.

"*Equity Rule.*—In equity as a rule time will not be regarded as of the essence of the contract, unless it affirmatively appears that the parties regarded time as an essential element of their bargain. But, although time is not made of the essence of the contract by express stipulation, it may nevertheless be held to have been so intended from the nature of the contract. A new agreement, extending the time of performance of a contract, is evidence that the parties considered time material.

"*Statutory Provisions.*—In several jurisdictions it is provided by statute that time shall not ordinarily be regarded as of the essence of contracts, unless expressly so provided.

"*Modern Rule.*—The tendency of the later authorities at law as well as in equity is to regard the question as one of construction, to be determined by the intent of the parties, and to hold that time is not ordinarily of the essence of the contract, unless made so by express stipulation, or unless there is something connected with the purpose of the contract and the circumstances surrounding it which makes it apparent that the parties intended that the contract must be performed at or within the time named. An express provision is not necessary in order to make time of the essence of the contract.

"*Express Stipulations.*—Where the parties to a contract by express stipulation make time of its essence, such provision will be enforced at law, and by the weight of au-

thority even in equity.  But equity will refuse to enforce
an express provision making time of the essence of the
contract, when to do so would be unconscionable; so under
some circumstances it will refuse to enforce a forfeiture.

"*Effect of Notice or Demand.*—Although time is not
made of the essence of a contract by express stipulation,
the party to whom performance is due may make it essen-
tial by a reasonable notice to perform, together with per-
formance or tender of performance on his part; but such
notice must allow a reasonable time to the other party to
perform, and can be given only where such other party
has been guilty of unreasonable or unnecessary delay.

"*Option Contracts.*—As a general rule a time fixed by a
contract within which an option may be exercised is to be
regarded as of the essence.

"*Fluctuating Value.*—Where the subject-matter of the
contract is of speculative or fluctuating value, it is gen-
erally held that the parties have intended that time shall
be of the essence. But it has been held that, where the par-
ties are dealing with property of a speculative character,
they will be regarded as not having intended time as of
the essence where, although the day for performance is
past, they treat the contract as still subsistent.

"*Mercantile Contracts.*—In mercantile contracts, such
as contracts for the manufacture and sale of goods and
the like, it is generally held that the parties have intended
time to be of the essence of the contract.

"*Related Contracts.*—Where several contracts relate to
successive parts of the same undertaking, the performance
of those later in time being necessarily dependent on those
prior, time is of the essence, although not so specifically
stated.

*"Payment of Money.*—As a general rule a stipulation for the payment of money at a particular time will not be regarded as an essential part of the agreement where the default admits of compensation; but the rule is otherwise where the obvious intention of the parties is to require strict performance, as where it is stipulated that on failure to pay an installment an entire sum shall become due, or where the duties of a trustee depend on whether or not payment is made at a date fixed, or where a provision is made for entry of judgment in case payment is not made on a date fixed."

From the foregoing it will be noted that the growing tendency has been to modify the harsh and often inequitable rule of the common law, and the courts now determine each case upon its own peculiar facts, the question as to whether time is of the essence of the contract being one of construction controlled by the intention of the parties, and the courts, in the absence of an express stipulation making time as of the essence, are not disposed to so treat it, unless the surrounding circumstances make it apparent that the parties intended that it should be ineffectual unless performed within the time stated. No case exactly in point has been called to our attention.

Counsel for the defendant did not file a brief in this court, but we have examined his brief filed in the court of civil appeals, and note that he is relying on a statement taken from Elliott on Contracts, par. 1157, as follows:

"Times may become of the essence of a contract for the sale of property, not only by the express stipulation of the parties, but from the very nature of the property itself, and especially when it is subject to sudden, frequent, or great fluctuations in value, as in case of mining property.

Contracts for the purchase of stock are of this description, and the reason assigned is that the daily fluctuations in the price render a punctual performance of the essence of the contract."

The "stock" referred to above is "shares of stock," and not "live stock."

There is no evidence in the record that milch cows have a daily fluctuating value, and the court cannot take judicial knowledge of such fact. We are rather of the opinion that, under normal conditions, they fluctuate very little in value. Hence this case does not fall within the class of property that suddenly, frequently, and greatly fluctuates in value.

We can conceive of instances where time would be of the essence in the sale of cattle. For example, where a purchaser should say to a party that on a certain day he was going to ship a car of cattle, and that if he would deliver his cattle to be shipped in the car he would pay him $75 per head therefor, and the owner of the cattle assented to this, but did not, in fact, deliver the cattle until the next day after the shipment. In that event time would be of the essence within the contemplation of the parties, and, not having made delivery within such time, the purchaser would not have to accept the cattle. On the other hand, where a party buys a lot of calves for pasturage purposes, and the seller agreed to deliver them on a fixed date, but on account of sickness or inclement weather he did not deliver them until a day later, the purchaser could not decline to accept the calves upon the theory that time was of the essence of the contract, because such was not the intention of the parties, as is manifest from the surrounding facts and circumstances.

In 13 Corpus Juris, p. 682, it is said:

"*Degree of Punctuality Required.*—In order to determine the intendment of exactness regard should be had to the character and objects of the contract and the circumstances under which it was made. Punctuality to a minute is not required, unless indispensable."

In *Furlong* v. *Barnes,* 8 R. I., 226, it was held that where the purchaser of merchandise for cash agreed to call at the seller's office before 9 o'clock in the evening to pay the balance, it was held that a tender made a few minutes after 9 would have been good.

In *New Jersey Co.* v. *Nathaniel Wise Co.,* 55 Misc. Rep., 294, 105 N. Y. Supp., 231, affirmed 125 App. Div., 918, mem., 109 N. Y. Supp., 1139, mem., it was held that the delivery of brick, under a contract providing that the brick should be delivered not later than a day named, on the day succeeding at 6:25 a. m., constituted a substantial performance of the contract.

In the case under consideration there is nothing in the record to indicate that the defendant would have suffered any loss, injury, or inconvenience by a day's delay, or that his cows had appreciated in value, and, under the facts, we feel constrained to hold that time was not of the essence of the contract.

We are further of the opinion that, under the circumstances, plaintiffs were entitled until the next morning to tender the money. Transactions of this character are usually settled by check. It is neither prudent nor customary for people to travel around the country with $1,600 in specie on their persons.

The plaintiffs were well known by the defendant, and he knew them to be substantial men, and the defendant

had not advised them that they would have to pay for the cows in money. The defendant had taken a check from them the previous day without question, and had paid them the difference in money. The plaintiffs had every reason to believe that defendant would take the checks, and the evidence shows that he would have done so but for the fact that he was seeking a way to avoid his contract. The checks, of course, were not a legal tender, and the fact that the defendant accepted the check. the previous day was not such an act as would compel him to accept the checks tendered the next day, but he should have given the plaintiffs an opportunity to procure the money and tender it.

In *Skinner* v. *Stone,* 144 Ark., 353, 222 S. W., 360, 11 A. L. R., 808 (a very recent decision) Stone undertook by correspondence to purchase from Skinner a tract of land. Skinner·wrote Stone as follows:

"Perryville, Ind., June 28, 1919.

"Mr. Will W. Stone, Gurdon, Ark.—Dear Sir: Your letter received asking for prices on land owned by me in Clark county, Arkansas. I will sell land and timber, 120 acres, for $2,500 cash.

"Yours truly,                    Lewis Skinner."

To this letter Stone replied as follows:

"Gurdon, Ark., July 5, 1919.

"Lewis Skinner, R. F. D. No. 1, Perryville, Ind.—Dear Mr. Skinner: Your price for your 120 acres of land near Smithton, Clark county, Arkansas, is rather high, but I am accepting your offer to take $2,500 cash for this land, and am enclosing your deed Arkansas form for you to make deed to Will W. Stone and have acknowledged before a notary public, attach draft to deed and send to the Mer-

chants' & Farmers' Bank, Gurdon, Arkansas, and I will take care of same.

"Very truly yours,          Will W. Stone."

Skinner did not execute the deed nor communicate further with Stone. Whereupon Stone filed a bill for a specific performance. There was a decree for Stone in the lower court. Upon appeal it was urged that appellant knew nothing about the responsibility or solvency of the Merchant's & Farmers' Bank of Gurdon, Ark., and could not therefore be compelled to accept this bank as his agent in closing the transaction, and that no tender of the purchase money had been made, and that appellee's offer to take care of a draft to be attached to the deed could not be treated as a tender. In reply to this contention the court said:

"So, too, in regard to the tender. Appellant did not exact cash, but the reference to cash must be treated as referring to the time of payment rather than to the manner of payment, as in ordinary transactions a check or draft is regarded as the equivalent of money. Appellant would have been within his legal rights in demanding money, but common fairness demanded that after his offer had been accepted he give appellee a chance to pay in money if that condition was to be imposed."

In *Bass* v. *White,* 65 N. Y., 565, a contract had been entered into for the purchase and delivery of coal within a specified time. A bill of lading for the coal was tendered after banking hours on Saturday, and the purchaser tendered a check for same which the seller refused to accept, and insisted that he must be paid in cash. On the following Monday morning the buyer came back and tendered money in payment for the coal, which was likewise refused

Farris v. Ferguson.

by the seller, on the ground that the tender of the money came too late.  The court held otherwise and said:

"Notice could be taken of the custom of business men to make such payments in the city of New York by checks."

In the case of *Servel* v. *Jamieson,* 255 Fed., 892, 167 C. C. A., 212, a written contract was entered into for the sale and purchase of a number of sheep, the contract expressly providing that they were to be taken up and paid for on a day certain, and the contract contained an express provision that time was to be of the essence.  The agent of the purchaser weighed the sheep on the morning of the day on which they were to be delivered and paid for  The purchaser did not see the seller until after banking hours on that day, when he tendered to him a check for the sheep, which the seller declined to receive.

The court held that the purchaser was entitled to reasonable time to obtain the money and make a tender, for the reason, as stated by the court, that "there was testimony tending to prove that the defendants had avoided the plaintiff's agent and delayed meeting him for the final settlement until after 4 p. m."

In *Pickle* v. *Auble,* 4 N. J. Eq., 315, the court held that the purchaser was entitled to reasonable time to procure and tender the money, the seller having refused to accept a check tendered, the court being of the opinion that—

"The defendant's conversation had fully justified the belief on complainant's part that specie would not be demanded."

In the instant case the plaintiffs had every reason to believe that these checks would be received, and their purchase and attempt to comply with their contract was in good faith, and, in our opinion, the defendant should have

given the plaintiffs an opportunity to have procured the money and tendered same to him.

For the reason indicated, the judgment of the court of civil appeals will be reversed, and the judgment of the circuit court will be affirmed.

The defendants will pay the costs accrued in the several courts.