### SIMMONS v. SWAN.

(Circuit Court of Appeals, First Circuit. March 3, 1926.)

No. 1869.

1. **Appeal and error ⊂⊃889(2)—Declaration will be regarded as amended to conform to course pursued at trial without objection in such particular.**

Where trial proceeded without objection as though declaration, in action for breach of contract, alleged prevention by defendant of acts required of plaintiff to be done, no injustice will be done by regarding declaration as amended to conform to course pursued at trial.

2. **Tender ⊂⊃13(1).**

As respects sufficiency of tender, provision in contract for payment of stipulated sum legally means payment in cash.

3. **Tender ⊂⊃13(1).**

Plaintiff tendering check in payment of stipulated consideration is in default, and cannot recover for breach of contract unless defendant prevented making of legal tender.

4. **Tender ⊂⊃28—Evidence held insufficient to show that plaintiff was prevented from making proper legal tender in cash by any action of defendant.**

In action for breach of contract, where plaintiff had failed to make tender in cash as provided in contract, evidence *held* insufficient to justify finding that he was prevented from making tender by any action of defendant.

Anderson, Circuit Judge, dissenting.

In Error to the District Court of the United States for the District of Massachusetts; Elisha H. Brewster, Judge.

Action by Ray C. Simmons against Edward P. Swan. Judgment for defendant, and plaintiff brings error. Affirmed.

William J. Malone, of Bristol, Conn., and Percy S. Bryant, of Hartford, Conn. (Morris S. Falk, of Hartford, Conn., on the brief), for plaintiff in error.

Charles Fairhurst, of Greenfield, Mass. (William A. Davenport, of Greenfield, Mass., on the brief), for defendant in error.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

BINGHAM, Circuit Judge. This is an action for breach of contract entered into between the plaintiff and the defendant on September 13, 1923.

In the declaration, after setting out the citizenship of the parties and the contract, the plaintiff alleged that, "at the time specified in said contract, the plaintiff was ready, able, and willing to perform all acts and things required of him to be done and performed by the terms of said contract, and offered to the defendant so to do, and demanded of the defendant that he perform and do the things required of him by the terms of said contract," that "the defendant neglected and refused to perform and do the things required of him by said contract," and that "by reason of said refusal" the plaintiff was damaged.

According to the contract, the defendant was to sell to the plaintiff a lot of land in South Deerfield, Mass., on which was situated a pickle factory, shed, and a four-tenement building, also two trucks and other equipment on the premises, used by the defendant in the operation of the pickle business, and the good will of the business. For this the plaintiff agreed to pay $15,000 as follows: $500 by check on the signing of the agreement, $2,500 on or before October 1,

1923, and the balance of said purchase price, namely, $12,000, by a note of the plaintiff payable to the order of the defendant on demand, with interest at 6 per cent. semiannually, and the plaintiff was to execute, acknowledge, and deliver to the defendant as security for said note "suitable mortgages, in standard form covering" the above property.

The defendant also agreed to sell to the plaintiff all the pickles he then had in tanks on the premises, and the plaintiff agreed to pay therefor the sum of $4 per thousand, according to the defendant's receipt book as of October 1, 1923. This payment was to be made by the plaintiff's note, payable to the order of the defendant on demand, with interest at 6 per cent. per annum, which was also to be signed by F. C. Gould and Thomas J. Molumphy as joint makers.

The time set for the performance of the agreement was "on or before October 1, 1923," and the place the office of Davenport & Fairhurst in Greenfield, Mass.; and it was further agreed that tender of performance on the part of the defendant would be sufficient if on said date (that is, on or before October 1, 1923) he left with Davenport & Fairhurst for delivery to the plaintiff "a deed and bill of sale" as required by the contract, and that tender of performance on the part of the plaintiff would be sufficient if, within such time, there were left with Davenport & Fairhurst for delivery to the defendant the "sum of $2,500," plus the $12,000 note secured by mortgages, and the pickle note; and it was further provided that, if the plaintiff failed to perform any of the promises and agreements stipulated, the $500, which was to be paid down on the signing of the contract, should be retained by the defendant as liquidated damages. It was also expressly stipulated that "time is of the essence of this contract."

[1] While the declaration alleged that, at the time specified in the contract for performance, the plaintiff was ready, able, and willing to perform all the acts and things required of him to be done and performed, and offered so to do, and contained no allegations of prevention by the defendant of any of the acts and things required of the plaintiff to be done, the plaintiff was permitted, in addition to introducing evidence on the question of performance, to show, if he could, that any requirement wherein he failed was due to his being prevented from performing by the defendant. Undoubtedly the plaintiff could have been limited in his proof to the allegations of his declaration had the defendant so insisted, but, as the trial proceeded

without objection in this particular, no injustice will be done by regarding the plaintiff's declaration as amended to conform to the course pursued at the trial.

At the close of all the evidence, at the court's direction, the jury returned a verdict for the defendant.

The questions presented by the assignments of error are: (1) Whether there was any evidence from which the jury could find that the plaintiff tendered performance in accordance with the terms of the contract so as to put the defendant in default; or (2) if his evidence failed to show tender of performance in a given particular, whether there was any evidence from which the jury could find that, as to that, the defendant prevented him from tendering performance.

The evidence was that the plaintiff resided in the town of East Hartford, Conn., and the defendant in South Deerfield, Mass., and that the office of Davenport & Fairhurst, the place where the contract was to be performed, was in Greenfield, Mass.; that shortly after September 22, 1923, the defendant received information through the mail that the plaintiff would be at the defendant's place on Monday, October 1, 1923, to carry out the contract; that he would not be there early in the morning as it was election day, and he wanted to vote before leaving; that, having this information, the defendant went that forenoon with his wife by automobile to Springfield, Mass., and after lunch drove to Westfield, thence to his home at South Deerfield and to the office of Davenport & Fairhurst in Greenfield; that about 12 o'clock Simmons and Gould arrived at the office of Davenport & Fairhurst in Greenfield; that about 2 o'clock the defendant telephoned the office of Davenport & Fairhurst from Westfield to inquire if the plaintiff and the other men were there, and to inform them that he was on his way to Greenfield and would probably be there by 3 o'clock; that this information was given to Simmons and Gould; that at about 2 o'clock Simmons and Gould consulted a Mr. Lawler, an attorney in Greenfield, about the matter of the contract; that about 3 o'clock, or a little thereafter, Simmons, Gould, and Lawler were at the office of Davenport & Fairhurst; that Mr. Molumphy, who was to sign the pickle note, left Connecticut about 1 o'clock by automobile, and reached the office of Davenport & Fairhurst a little after 3 o'clock and after Simmons, Gould and Lawler reached there; that the banks in South Deerfield and Greenfield closed at 3 o'clock; that the defendant arrived at the office of Davenport & Fairhurst some-

where from 4:15 to between 5 and 6 o'clock, having his wife with him; that he had previously signed and left with Davenport & Fairhurst the bill of sale called for by the contract and the deed of the real estate; that his wife that day signed the deed; that after the wife signed the deed the plaintiff and defendant fixed upon the sum for which the pickle note should be filled out; that the pickle note was made and signed, as was also the note for $12,000 that went to make up the purchase price for the real estate and pickle business, and the mortgages on the real estate and personal property (not including the pickles) were signed; that a discussion was had as to defendant's engaging in a competing business, but this matter was disposed of by inserting in the bill of sale an agreement that he should not compete for a period of 15 years; that there was further discussion as to the time when the defendant would require payment of the demand notes, which rendered doubtful the prospect of the plaintiff carrying out the contract, but the plaintiff finally decided that he would go through with the deal and tendered to defendant a check or certificate of deposit on the Produce National Bank of South Deerfield for the $2,500, together with the mortgages and the two notes; that Swan declined to accept the check or certificate, insisting on money or cash, but neither the plaintiff nor those with him had the money; that the check or draft tendered was payable to F. C. Gould.

[2, 3] The provision in the contract whereby the plaintiff agreed to pay the sum of $2,500 as a part of the consideration for the pickle plant legally means that the plaintiff agreed to pay that amount in cash (Pearlstein v. Novitch, 131 N. E. 853, 239 Mass. 228; Vick v. Howard, 116 S. E. 465, 136 Va. 101, 108, 31 A. L. R. 240), and the plaintiff, having failed to tender cash or legal tender, was in default, and cannot recover unless there was evidence from which it could be found that the defendant prevented the plaintiff from making a proper tender in cash (Servel v. Jamieson, 255 F. 892, 167 C. C. A. 212; Breed v. Hurd, 6 Pick. [Mass.] 356).

[4] We think there was no evidence on which such a finding could be based. The defendant was under no obligation to notify the plaintiff in advance that he would require cash. The plaintiff was bound to know that cash was required to meet his obligation. The jury would not have been warranted in finding that the defendant prevented the plaintiff from tendering the cash at the place

named for performance from the fact that the defendant did not arrive at the office of Davenport & Fairhurst until some time between 4 and 6 o'clock and after the banks were closed. The plaintiff could have brought the money with him from Connecticut, obtained it at the bank in South Deerfield where he procured the certified check, or even obtained it in Greenfield before the closing of the banks, for he knew at 2 o'clock or thereabouts that the defendant would not arrive in Greenfield to consummate the trade until 3 o'clock or thereafter.

The judgment of the District Court is affirmed, with costs to the defendant in error.

ANDERSON, Circuit Judge (dissenting). In this case the result reached is grossly unjust to the plaintiff. More important, the decision commits this court to a rule of law entirely inconsistent with modern business practices, and which will inevitably operate to promote trickery and unfair dealing. It tends to destroy the obligation of contracts, the enforcement of which is one of the main duties of courts of justice. Law, as a right-enforcer, ought not to be allowed to drag, unnecessarily, behind the established, honest, practices of the business community.

The agreement required that "$2,500 * * * be paid" by the plaintiff. He tendered a check, certified by a bank of conceded soundness, in exact accordance with the established practices in the overwhelming majority of commercial transactions involving any substantial amounts. He is now held to have lost his bargain because he did not procure and tender, long after the close of banking hours, legal tender for $2,500.

It is elementary that tender is waived whenever the prospective payee "in any way obstructs or prevents a tender." See 38 Cyc. 136. Estoppel may well be the more applicable term. The gist is that the defendant left the plaintiff without the slightest reason to expect that payment by the usual method in all substantial business transactions would not be accepted. Cf. Shutte v. Thompson, 15 Wall. 151, 159, 160, 21 L. Ed. 123; Wight v. Davidson, 21 S. Ct. 616, 181 U. S. 371, 377, 45 L. Ed. 900; Mutual Life Ins. Co. v. Hill, 24 S. Ct. 538, 193 U. S. 551, 560, 48 L. Ed. 788; Baker v. Humphrey, 101 U. S. 495, 25 L. Ed. 1065. In my opinion there was abundant evidence in this case for the jury of such waiver or estoppel. The defendant's motive to escape from his contract was obvious; for, because of a frost, the stock of pickles he was selling were then worth substantially more than the contract price. He did

not reach the place agreed upon for completing the trade until after the close of ordinary business hours. This was a most significant fact. It was at least 6 or 7 o'clock in the evening before the papers were ready to be passed. Then, for the first time, the defendant refused to accept the plaintiff's certified check, demanded cash, and, failing to get it, left the office. There were other facts and circumstances tending to show that defendant sought and found (as is now in effect held) a chance to trick the plaintiff out of rights arising under any fair and honest code of business ethics.

The case for the plaintiff is at least as strong as in Servel v. Jamieson, 255 F. 892, 167 C. C. A. 212, where the Court of Appeals for the Ninth Circuit reversed a ruling of the District Court like the one made by the court below in this case, holding the case was for the jury.

I find no case which, on fair analysis of the facts, goes so far in support of an inappropriate and unnecessarily technical rule as does the decision of the majority in this case. This decision extends a rule that should be narrowed. What the business community generally understands the word "payment" to mean should, so far as possible, be its meaning in law. At any rate, attempts to escape performance of contract obligations by invoking technicalities of this sort call for a liberal interpretation of the doctrine of estoppel and the submission of all questions of fact to the conscience and intelligence of the jury.