# Richmond

## LEVY VICK v. RICHARD HOWARD.

### March 15, 1923.

1. TENDER—*Legal Tender—Gold and Silver Certificates and Bank Notes—Instructions—Harmless Error.*—In the instant case, an action against vendor for breach of contract of sale, it appeared that the vendee upon the date of final payment had tendered the vendor the balance of the purchase price in currency, consisting in part of national bank notes and silver and gold certificates. The trial court instructed the jury that the vendor had a right to require the payment of all the purchase money in legal tender, and that gold and silver certificates and bank notes were not legal tender.

   *Held:* That the court was right in instructing the jury that national bank notes and silver certificates did not constitute legal tender, but erred in its instruction that gold certificates were not legal tender. This error, however, was immaterial and not prejudicial, because the greater part of the money tendered consisted of national bank notes, and if vendor had a right to demand legal tender money, the full amount of such money was requisite.

2. TENDER—*Legal Tender—Vendor and Purchaser—Contract to Pay so Many "Dollars."*—A contract of sale provided that the vendee was to pay so many "dollars." This, according to the universal understanding and holding in the courts of Virginia and of the United States means "lawful money of the United States;" that is to say, money which by the acts of Congress constitutes legal tender. Therefore, in the absence of waiver, express or implied, the vendor had a right to demand legal tender in payment.

3. TENDER—*Legal Tender—National Bank Notes—"Money."*—National bank notes are generally regarded as money, and constitute a large part of the currency of the country. The word "money" in its generic sense is one of very comprehensive import, and includes any lawful circulating medium of exchange. But there is a clear distinction between money which is, and money which is not, legal tender. All legal tender is money, but not all money is legal tender.

4. TENDER—*Legal Tender—National Bank Notes—Vendor and Purchaser—Case at Bar.*—Although under conditions now prevailing in this country one kind of currency is as good as another, and although in the instant case vendor would have been just as well off with the money

which he was tendered as with that which he demanded, yet this does not affect the legal result. Congress has power to declare, and has declared, what kind of money shall be legal tender for the payment of private obligations, and national bank notes are not such money.

5. TENDER—*Legal Tender—Waiver—Vendor and Purchaser—Case at Bar.*— In the instant case, an action for breach of contract of sale by vendor, it was contended that vendor had waived his right to demand legal tender in payment of the balance of the purchase price. It was contended by vendee that vendor had accepted current funds which did not constitute legal tender as the first payment on the purchase price.

   *Held:* That conceding this, vendor's acceptance thereof would not have been sufficient to operate as a waiver of his right to require legal tender of the balance.

6. PAYMENT—*Legal Tender—Acceptance of Checks or Payments in Current Funds as Waiver of Right to Demand Legal Tender of Balance.*—Even the acceptance of a number of previous checks or payments in current funds does not constitute a waiver of the right to demand legal tender as to any unpaid balance, though such a course of conduct might be very material as to the payor's right to a reasonable time after expiration of the date of payment to secure legal tender and offer the same.

7. VENDOR AND PURCHASER—*Payment of Purchase Price—Legal Tender— Vendor Not Wishing to Comply with His Contract.*—In the instant case, an action against a vendor for breach of contract, it was clear that the vendor did not wish to comply with his contract, and had other reasons for declining to make the deed besides the failure of the vendee to tender the balance of the purchase money in legal tender money.

   *Held:* That whether these reasons were good or bad, it did not affect vendor's right to require the vendee to comply with the law and to tender in discharge of the obligation lawful money of the United States.

8. PAYMENT—*Legal Tender—Custom.*—While it is true that by common consent debts are usually paid in any funds which ordinarily pass as money, this custom does not entitle a debtor, over the protest of his creditor, to make payment in such funds, for the party to whom they may be tendered has an undoubted right to refuse accepting them as money if they are not legal tender.

9. PAYMENT—*Legal Tender—Effect of Section 6142 of the Code of 1919, Authorizing Payment Into Court or Tender in Pais.*—Section 6142 of the Code of 1919, providing for payment of money into court, has reference to the effect of tender after maturity, and not to the character of the tender. The statute was not designed to affect the law as it applies to the question of a legal tender *in pais.* Therefore, it does

not alter the right of a vendor to demand payment of purchase money in legal tender.

10. VENDOR AND PURCHASER—*Payment—Legal Tender—Reasonable Time to Procure Legal Tender.*—Where a vendor refused the money offered him by the vendee in payment of purchase price on the date fixed for such payment on the ground that it was not legal tender money, the vendee does not lose the right to make legal tender the next day, or within a reasonable time, and to compel the vendor to convey the property. The vendee might well have supposed that the vendor would be willing to receive current funds, and if he makes a legal tender within a reasonable time, a court of equity would require specific performance by the vendor.

Error to a judgment of the Circuit Court of Southampton county in a proceeding by motion for a judgment for damages. Judgment for defendant. Plaintiff assigns error.

*Affirmed.*

The opinion states the case.

*Turnbull & Turnbull* and *Jas. T. Gillette,* for the plaintiff in error.

*Jas. H. Corbitt* and *John N. Sebrell, Jr.,* for the defendant in error.

KELLY, P., delivered the opinion of the court.

This is a proceeding by motion instituted by Levy Vick against Richard Howard to recover damages for an alleged breach of a contract for the sale of real estate. There was a verdict and judgment below in favor of Howard, and Vick assigns error.

On the 8th day of May, 1920, these parties entered into a written contract, signed by each of them, which, so far as material to this controversy, was as follows:

"Received of Levy Vick the sum of one hundred dollars in part payment of that certain lot or parcel of land

known as the store and bank building, situated (here follows description), and that certain farm known as the Neal Place, situated (here follows description), which I have this day sold the said Levy Vick for the sum of twenty-five thousand dollars ($25,000.00), balance to be paid in ninety days from this date, the said property to be given possession of at the time of the payment for the property.   *   *   *   I, the said Levy Vick, have this day purchased the said property upon the terms and conditions as stated above."

The "terms and conditions" referred to in the contract are in no way material to this case.

On July 31, 1920, pursuant to an arrangement which had been previously agreed upon, Vick signed and delivered to the Beaton Realty Corporation the following memorandum: "I hereby assign the within contract to the Beaton Realty Corporation of Boykins, Va., for the sum of fifty-five hundred dollars to be paid when deed for said property is presented."

In our view of the case it is unnecessary to consider the legal effect of the last mentioned paper. It is sufficient to say that the real consideration therefor was $6,000.00, $500.00 having already been paid to Vick by the corporation, and that the true arrangement between the parties was that the corporation was to take over the property at the price of $31,000.00 and was ready and able to do so, thereby affording Vick the opportunity to make a profit of $6,000.00 on his purchase from Howard. As will hereafter appear, neither Vick nor the Beaton Realty Corporation got a deed for the property, and this suit was brought for the sum of $6,000.00 which Vick would have realized if Howard had made the deed.

On the 26th day of July, 1920, Howard went away from his home on what fairly appears from the record

to have been a vacation, going first to Virginia Beach for a few days, then to Hampton where he visited some relations until the 6th of August. On the last named day he returned to Newsoms where both he and Vick resided. There is an insistent contention by counsel for Vick that Howard went on this trip for the purpose of evading a tender of the balance of the purchase money, and in an effort to deprive Vick of the opportunity to comply with the contract. We do not find that this contention, even if material, is very well supported by the evidence. It is clear from the record that he was anxious to get out of the contract, but he was at home during much the greater part of the ninety days within which the final payment was to be made; and he returned to his home before the expiration of that period.

During Howard's absence, the Beaton Realty Corporation secured the means necessary to carry out its agreement with Vick, and the latter was anxious to locate Howard and pay the balance of the purchase money under the contract with him. When Howard returned to Newsoms on the morning of August 6th, the last day of the period fixed for the payment of the balance, an attorney representing Vick and the Beaton Realty Corporation offered him some money and a certified check, which he declined to accept. He was then asked to prepare a deed for the property and was told in substance that the attorney and Mr. Beaton, president of the Realty Corporation, would come back in a short time with the whole amount in cash. This was shortly after noon, and a little later in the evening the same parties returned with the balance of the purchase price in currency, but a large part of the money they had consisted of national bank notes and other bills which do not constitute legal tender within the requirements of the acts of Congress. A tender of this money

was made to Howard and he declined to accept it. According to the testimony for the plaintiff, Howard said at that time that he would not accept the money and give a deed "because he had not been treated right and it was not legal tender," and also said, "It was too much of Arthur Woolford's (Bank of Suffolk) money." According to Howard's testimony, on the other hand, he told the parties making the tender that he had other reasons which he did not deem necessary to state, but added, "I have got one reason: It is not legal tender." In any view of the evidence, he based his refusal to accept the money on the specific ground that it was not a legal tender. Later on that day Howard was asked whether he would make a deed if they would "bring him the kind of money he wished," and he replied that he would answer when he saw the money.

The attorney representing Vick and the Beaton Realty Corporation made some further effort that evening to secure enough legal tender money to make up the whole amount of the balance due Howard but did not succeed, and the day passed without any further tender having been made; and no tender *in pais* was at any time thereafter made to Howard.

Some time later, just when does not appear, the Beaton Realty Corporation brought a suit against Howard for specific performance. While that suit was pending, to-wit, on the 26th day of November, 1920, Howard wrote the Beaton Realty Corporation referring to the suit, saying that he did not consider himself bound by the contract with Vick but that he desired to avoid any disagreeable litigation, and that he would execute a deed for the property upon payment of the balance of the purchase price. To this letter the Beaton· Realty Corporation replied on December 10, 1920, declining to take the property, and the suit was dismissed on the motion of the complainant.

After the conclusion of the evidence in the instant case, the plaintiff and defendant respectively asked for certain instructions, all of which were refused except the following, which was given on behalf of the plaintiff.

"The court instructs the jury that Howard had a right to require the payment of all the purchase money in legal tender, and he had a right to refuse to make the deed unless all of the money tendered was recognized by law as a legal tender, and the court further instructs you that gold certificates are not a legal tender, silver certificates are not a legal tender, national bank notes are not a legal tender in this case.

"The court further instructs you that if, therefore, the money tendered Howard consisted in part of gold certificates and national bank notes, such was not a legal tender and Howard had the legal right to refuse to receive the same and in such case the jury should find for the defendant."

If this instruction was correct, it was conclusive of the case, and any discussion of the other instructions is unnecessary.

[1] The court was clearly right in telling the jury that national bank notes and silver certificates did not constitute legal tender. Gold certificates were made legal tender by the act of Congress of December 24, 1919, 41 Stat. (U. S.) 370, chap. 15, secs. 1 and 2; Burks' Pl. & Pr. (2nd ed.) p. 640, note 57), and the instruction as to such certificates was in error. This, however, is immaterial because the greater part of the money tendered consisted of national bank notes, and this error in the instruction, therefore, did not prejudice the defendant. If Howard was entitled to demand legal tender money, the full amount of such money was requisite. See Burks' Pl. & Pr. (2nd ed.) p. 363, note 2, and also p. 640, note 57.

[2] The sole question in the case is whether the defendant had the right to demand legal tender and to refuse to execute a deed unless such tender was made. We see no escape from an affirmative answer to this question. The contract was to pay so many "dollars," and this, according to the universal understanding and holding in the courts of Virginia and of the United States, means "lawful money of the United States," that is to say, money which by the acts of Congress constitutes legal tender. *Omohundro* v. *Crump*, 18 Gratt. (59 Va.) 705; *Lohman* v. *Crouch*, 19 Gratt. (60 Va.) 331; *Hilb* v. *Peyton*, 22 Gratt. (63 Va.) 551, 561; 1 Dan. Neg. Inst. (6th ed.), sec. 87; *Bank* v. *Supervisors*, 7 Wall. 26, 30, 19 L. Ed. 60; *Thorington* v. *Smith*, 8 Wall. 1, 12, 19 L. Ed. 361; *Cheney* v. *Libby*, 134 U. S. 68, 10 Sup. Ct. 498, 33 L. Ed. 818, 823. This being true, in the absence of waiver express or implied, Howard's right to demand legal tender was perfectly clear. Burks' Pl. & Pr. (2nd ed.) 363, note 2, 21 R. C. L. p. 39, sec. 47; 3 Williston on Contracts, sec. 1810; 3 Elliott on Contracts, sec. 1958; 2 Benj. on Sales (4 Am. ed. by Corbin), sec. 1066 and note 11; *Hallowell, etc., Bank* v. *Howard*, 13 Mass. 235; *Corbit* v. *Bank of Smyrna*, 2 Har. (Del.) 235, 30 Am. Dec. 635; *Martin* v. *Bott*, 17 Ind. App. 444, 46 N. E. 151, 153; *Cheney* v. *Libby*, *supra*; Legal Tender Cases, 12 Wall. 457, 545, 549, 20 L. Ed. 287; *Juilliard* v. *Greenman*, 110 U. S. 421, 4 Sup. Ct. 122, 28 L. Ed. 204.

[3] National bank notes are generally regarded as money and constitute a large part of the currency of the country. The word "money" in its generic sense is one of very comprehensive import, and includes any lawful circulating medium of exchange. *Town of Danville* v. *Sutherlin*, 20 Gratt. (61 Va.) 555, 583; *Dillard* v. *Dillard*, 97 Va. 434, 438, 34 S. E. 60; 18 R. C. L. 1268-1270,

secs. 3, 4; *State* v. *Finnegean,* 127 Iowa 286, 103 N. W.
155, 4 Ann. Cas. 628, note 630; *Klauber* v. *Biggerstaff,*
47 Wis. 551, 3 N. W. 357, 32 Am. Rep. 773, 779, 780;
*Woodruff* v. *Mississippi,* 162 U. S. 291, 16 Sup. Ct. 820,
40 L. Ed. 973, 976. Some expressions used in these and
similar authorities appear upon casual reading to place
all kinds of *current money* upon a parity in every respect,
but this is not their true meaning and effect. The
authorities last cited, and the many others like them
which we have examined, clearly recognize the distinc-
tion between money which is, and money which is not,
legal tender. In other words, all legal tender is money,
but not all money is legal tender. The confusion which
is sometimes said to be found in the cases is more ap-
parent than real, but where it does exist it is due, as
said in *State* v. *Finnegean, supra,* to a "want of proper
distinction between money which is current and money
which is legal tender."

[4] It may be conceded that under conditions pre-
vailing in this country now one kind of currency is as
good as another, and that Howard would have been
just as well off with the money which he was offered as
with that which he demanded. But this does not affect
the legal result. Congress had the power to declare,
and has declared, what kind of money shall be legal
tender for the payment of private obligations, and
national bank notes are not such money. 7 U. S. Comp.
Stats. secs. 6571-6577; 41 St. at L. 370, ch. 15; Legal
Tender Cases, *supra.*

[5; 6] It is insisted that Howard waived his right to
demand legal tender, but this position is not sustained
by the evidence. The record does not show what kind
of money he accepted in payment of the $100.00 which
was paid to him when the contract was made, but if it be
conceded that, as contended by the plaintiff, it con-

sisted of current funds which did not constitute lawful money of the United States, still his acceptance thereof would not have been sufficient to operate as a waiver of his right to require legal tender of the balance. If the position here insisted upon by counsel for Vick could be sustained, then it would seem to follow that if the original one hundred dollars had been paid by check Howard would have been bound to also accept a check for the balance, and this, of course, is not a sound conclusion. Even the acceptance of a number of previous checks or payments in current funds would not have constituted a waiver as to any unpaid balance. (*Cheney* v. *Libby, supra.*) Such a course of conduct might have been very material as to Vick's right to a reasonable time after expiration of the ninety days to secure legal tender and offer the same to Howard, but not as to Howard's right to refuse the money which was offered him on August 6th.

[7, 8] It seems clear, as we have already said, that Howard did not wish to comply with his contract and had other reasons for declining to make the deed. These reasons are not disclosed, and may or may not have been such as a court of conscience would approve, but whether good or not they did not affect his right to require the plaintiff to comply with the law and to tender in discharge of the obligation lawful money of the United States. It is quite true that by common consent debts are usually paid in any funds which ordinarily pass as money; but the contention of the plaintiff that this custom entitled him, over the protest of the defendant, to make the payment in this case in such funds is not supported by authority.

In 1 Dan. Neg. Inst. (6th ed.), sec. 87, the author says: "When the term 'dollars' is used in any security for money given in any of the United States, it is un-

derstood to mean dollars 'of legal money of the United States;' and extraneous evidence will not be permitted as a general rule to give it a different signification." See also the authorities cited, *supra*.

In *Corbit* v. *Smyrna Bank, supra,* it is said: "Bank notes constitute a large and convenient part of the currency of our country, and, by common consent, serve to a great extent all the purposes of coin. In themselves, they are not money, for they are not a legal tender; and yet they are a good tender, *unless especially objected to as being notes merely,* and not money. *Miller* v. *Race,* 1 Burr. 457; *Bank of United States* v. *Bank of Georgia,* 10 Wheat. 333; *Handy* v. *Dobbin,* 12 Johns. 220; *Wright* v. *Read,* 3 Term R. 554. They subserve the purposes of money in the ordinary business of life, by the mutual consent (express or implied) of the parties to a contract, and not by binding force of any common usage; *for the party to whom they may be tendered has an undoubted right to refuse accepting them as money."* (Italics added.)   See also 21 R. C. L. p. 39-40, sec. 36.

[9] Nor is the case, as plaintiff contends, affected by section 6142 of the Code of Virginia providing for payment of money into court, or by the following comment thereon in Burks' Pl. & Pr. (2nd ed.), p. 364-365: "In Virginia, while the common law doctrine of tender has not been specifically repealed or abolished, it has been practically superseded by statute. * * *

"These enactments apply to all personal actions whether upon tort or contract, and if a tender, after maturity of a money demand, be made of the full amount (principal and interest to date of tender), and be arbitrarily refused, and the debtor keeps his tender good, and pays the money into court and files a plea under section 3296, it is not likely that any court or ury would require more."

The language here quoted has reference to the effect of tender after maturity and not to the character of the tender. Whether a payment of money into court under the statute could, by timely action, be successfully challenged if offered in the form of a check or bank notes or other currency not constituting legal tender, is a question which we need not consider. It is certain that the statute in question was not designed to affect the law as it applies to the question of a legal tender *in pais.*

[10] The action of Howard in refusing the money offered him on the 6th day of August was not necessarily fraught with the injustice and hardship which counsel for the defendant seem to think it entailed. Neither Vick nor the Realty Corporation necessarily lost the right to make legal tender the next day or within a reasonable time, and to compel Howard to convey the property. As a matter of fact neither of these parties, so far as the record shows, ever asked Howard for a deed, or ever made him any tender of money after the 6th of August, except in so far as such request and tender may have been embodied in the suit for specific performance which was subsequently brought by the Realty Corporation. When that suit was brought, Howard offered to make a deed upon payment of the balance of the purchase money, and he would doubtless have been required to make it if he had declined, but the complainant refused to accept his offer and had the suit dismissed.

The principles governing the legal and equitable rights of the parties in the instant case seem to us to have been properly announced and applied in the case of *Cheney* v. *Libby, supra,* wherein the court said: "Although the contract between Cheney and Libby called for payment in dollars, the latter might well have supposed, unless distinctly informed to the contrary, that

the former would be willing to receive current funds, that is, such as are ordinarily received by men of business or by banks. And such funds were received in payment of all of Libby's notes falling due in 1880 to 1884, inclusive. *While this course of business was not an absolute waiver by Cheney of his right to demand coin or legal tender paper in payment* of notes subsequently falling due, such conduct, during a period of several years, was calculated to produce the impression upon Libby's mind that current or bankable funds would be received in payment of any of his notes. And, therefore, upon every principle of fair dealing Cheney was bound to give reasonable notice of his purpose, after 1884, to accept only such funds as, under the contract, strictly interpreted, he was entitled to demand. No such notice was given. On the contrary, the just inference from the testimony is, that Cheney designed to throw Libby off his guard, and render it impossible for the latter, or for the bankers to whom he sent drafts to be used in paying his notes, to supply the requisite amount of coin or legal-tender paper, on the very day the notes matured. * * *" (Italics added.)

It will be observed, of course, from the foregoing quotation that the *Cheney Case* was upon its facts much stronger than this one for the enforcement of the contract. We are of opinion, however, that if a legal tender had been made within a reasonable time after the 6th of August, a court of equity would have required-Howard to specifically perform the contract.

Upon the evidence before us, there was no view of the case under which the plaintiff was entitled to recover in a suit of this character. The judgment complained of is right, and must be affirmed.

*Affirmed.*