THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* MURRAY WINTERS, Appellant.

First Department, May 19, 1944.

*Arthur N. Seiff* for appellant.

*Alan J. Elliot* of counsel (*Stanley H. Fuld* with him on the brief; *Frank S. Hogan, District Attorney*), for respondent.

*Emanuel Redfield* of counsel (*Osmond K. Fraenkel,* attorney), for New York City Committee, American Civil Liberties Union, *amicus curiæ.*

COHN, J.  Defendant, a bookdealer, found in possession of a large number of magazines which purported to contain true

cases of crimes from police records and files, was convicted in the Court of Special Sessions of the City of New York of a violation of subdivision 2 of section 1141 of the Penal Law.

The statute reads as follows:

" A person  *  *  *  who  *  *  *

" 2. Prints, utters, publishes, sells, lends, gives away, distributes or shows, or has in his possession with intent to sell, lend, give away, distribute or show, or otherwise offers for sale, loan, gift or distribution, any book, pamphlet, magazine, newspaper or other printed paper devoted to. the publication, and principally made up of criminal news, police reports, or accounts of criminal deeds, or pictures, or stories of deeds of bloodshed, lust or crime;  *  *  *

" Is guilty of a misdemeanor  *  *  *."

Upon the evidence submitted at the trial, there was a sufficient showing that defendant had in his possession the magazines with intent to sell. As the information charges, the magazines are, without doubt, " devoted to the publication and principally made up of criminal news, police reports, and accounts of criminal deeds, and pictures, and stories of deeds of bloodshed, lust and crime." They contain a collection of crime stories which portray in vivid fashion tales of vice, murder and intrigue. The stories are embellished with . pictures of fiendish and gruesome crimes, and are besprinkled with lurid photographs of victims and perpetrators. Featured articles bear such titles as " Bargains in Bodies," " Girl Slave to a Love Cult," and " Girls' Reformatory "; these suggest the pattern of the literature.

That such publications tend to demoralize the minds of their more impressionable readers cannot be doubted. The statute which is aimed at restraining the publication and sale of such printed matter, we think, is a legitimate exercise of the police power of the State in that it is designed to promote the general welfare and to protect the morals of the community. (*People* v. *Gitlow,* 234 N. Y. 132, 137, affd. *Gitlow* v. *New York,* 268 U. S. 652.) A similar statute was upheld by the Supreme Court of Errors of the State of Connecticut upon the ground that publications devoted wholly or mainly to lawless deeds of bloodshed, lustful or lascivious conduct are " calculated to induce, especially among the young, the immoralities they are thus incited to dwell upon, and so to endanger the public morals " (*State* v. *McKee,* 73 Conn. 18, 26).

Upon the same principle, it has been held in other jurisdictions that a State may forbid the publication of details of an

execution of death for crime (*State* v. *Pioneer Press Co.*, 100 Minn. 173) or the publication of scandal, and stories of immoral conduct. (*Williams* v. *State*, 130 Miss. 827; *In re Banks*, 56 Kan. 242; *State* v. *Van Wye*, 136 Mo. 227; *Commonwealth* v. *Herald Pub. Co.*, 128 Ky. 424.)

The statute here involved condemns the sale and printing of books, pamphlets, magazines and newspapers which are " devoted to the publication, and principally made up of " pictures and stories of deeds of bloodshed, lust or crime. Publications dealing with crime news as an incident to the legitimate purposes of science or literature are not prohibited. Moreover, as the prosecution readily concedes, the statute does not seek to suppress " a large class of recognized literature, including practically all detective and western stories and books." It is aimed exclusively at printed matter which presents tales of bloodshed, crime or lust in a manner that would have a tendency to demoralize its readers and would be likely to corrupt the morals of the young and lead them to immoral acts.

Defendant urges that the law under which he was convicted is unconstitutional in that it violates the State Bill of Rights (N. Y. Const. art. I, § 8) and the Fourteenth Amendment of the Federal Constitution.

The State Constitution (art. I, § 8) provides in part: " Every citizen may freely speak, write and publish his sentiments on all subjects, being responsible for the abuse of that right; and no law shall be passed to restrain or abridge the liberty of speech or of the press." The freedom of speech and of the press, which is secured by such a constitutional guarantee, does not imply complete exemption from responsibility for everything a citizen may say or publish. Indeed, the State Bill of Rights expressly provides that a person exercising the freedom is responsible for the abuse of that right.

Pursuant to the police power and without abridging freedom of the press, the State may enact reasonable regulations in order to protect the general welfare, public safety and order and public morals. In *People* v. *Gitlow* (*supra*) the Court of Appeals (at p. 137) said: " ' While the right to publish is thus sanctioned and secured, the abuse of that right is excepted from the protection of the Constitution, and authority to provide for and punish such abuse is left to the Legislature. The punishment of those who publish articles which tend to corrupt morals, induce crime or destroy organized society, is essential to the security of freedom and the stability of the State. While all the agencies of government, executive, legislative and

judicial, cannot abridge the freedom of the press, the Legislature may control and the courts may punish the licentiousness of the press.' " In *People* v. *Most* (171 N. Y. 423) the court said (p. 431) : " The Constitution does not protect a publisher from the consequences of a crime committed by the act of publication. It does not shield a printed attack on private character, for the same section [N. Y. Const. art. I, § 8] from which the above quotation is taken expressly sanctions criminal prosecution for libel. It does not permit the advertisement of lotteries, for the next section prohibits lotteries and the sale of lottery tickets. It does not permit the publication of blasphemous. or obscene articles, as the authorities uniformly hold. (*People* v. *Ruggles,* 8 Johns. 290, 297; *People* v. *Muller,* 96 N. Y. 408; *In re Rapier,* 143 U. S. 110.) It places no restraint upon the power of the Legislature to punish the publication of matter which is injurious to society according to the standard of the common law. It does not deprive the State of the primary right of self-preservation. \* \* \*.''

By the due process clause of the Fourteenth Amendment of the Federal Constitution, it is provided: " nor shall any State deprive any person of life, liberty, or property, without due process of law ''.

It is now well settled that freedom of the press, like freedom of speech, is a fundamental personal right and that the due process clause of the Fourteenth Amendment may make it unlawful for a State to abridge by its statutes freedom of the press which the First Amendment safeguards against encroachment by Congress. (*Thornhill* v. *Alabama,* 310 U. S. 88, 95; *Lovell* v. *Griffin,* 303 U. S 444, 450; *Grosjean* v. *American Press Co.,* 297 U. S. 233, 244; *Palko* v. *Connecticut,* 302 U. S. 319, 324.) However, it is equally well settled that this constitutional guarantee of freedom of speech and of the press does not deprive the State of its police power to enact laws in the legitimate exercise of the police power. (*Gitlow* v. *New York,* 268 U. S. 652, 666–667; *Stromberg* v. *California,* 283 U. S. 359, 368–369.) In *Near* v. *Minnesota* (283 U. S. 697) the United States Supreme Court reiterated the principle in the following language by Chief Justice HUGHES (pp. 707–708) : " It is no longer open to doubt that the liberty of the press, and of speech, is within the liberty safeguarded by the due process clause of the Fourteenth Amendment from invasion by State action. It was found impossible to conclude that this essential personal liberty of the citizen was left unprotected by the general guaranty of fundamental rights of person and property. \* \* \* In maintaining this

guaranty, the authority of the State to enact laws to promote the health, safety, morals and general welfare of its people is necessarily admitted. The limits of this sovereign power must always be determined with appropriate regard to the particular subject of its exercise. · * * * Liberty of speech, and of the press, is also not an absolute right, and the State may punish its abuse.''

Accordingly, we conclude that the statute challenged is valid, that its enactment is a legitimate exercise of the police power of the State, and that it is not violative of the State or the Federal Constitution.

The judgment of conviction should be affirmed.

MARTIN, P. J., TOWNLEY, GLENNON and DORE, JJ., concur.

Judgment unanimously affirmed.