64 So.2d 166 (1953)
SMITH
v.
ERVIN, Atty. Gen. et al.
Supreme Court of Florida, en Banc.
March 17, 1953.
*167 J. Kenneth Ballinger, Tallahassee, for appellant.
Richard W. Ervin, Atty. Gen., John A. Madigan, Jr., and Howard S. Bailey, Asst. Attys. Gen., for appellees.
Charles O. Andrews, Jr., Orlando, amicus curiae.
HOBSON, Justice.
Honorable Henry C. Tillman, who heard and determined this case below, entered the following declaratory decree:
"Ordered, Adjudged And Decreed That:
"A. This Court has jurisdiction by declaratory decree to settle the questions of law raised by the bill of complaint, and to declare Plaintiff's rights thereunder, and, accordingly, the Defendants' motion to dismiss contained in their answer is hereby denied.
"B. The joint motion for judgment on the pleadings is granted.
"C. Subsections (4)(a) and (7) of Section 99.161, Florida Statutes [F.S.A.], are valid exercises of the police power of the State and do not contravene Section 13 of the Declaration of Rights in the Florida Constitution [F.S.A.].
"D. The specific questions on which plaintiff, by his bill of complaint, seeks adjudication are answered as follows:
"1. Plaintiff, as owner of a duly licensed and operating radio station in the State of Florida may not accept money or checks (as those words are commonly intended and understood) in payment of political advertising in furtherance of the candidacy of a candidate for political office in the State of Florida unless authorized by the campaign treasurer of such candidate as prescribed in subsection (7) of Section 99.161 Florida Statutes [F.S.A.]. However, this authorization need only be in the form of a letter or memorandum, signed by said treasurer, authorizing the contributor to make such expenditure, and accepting the advertisement as a contribution of a thing of value, to be recorded and reported as such.
"2. An individual citizen of the State of Florida may purchase time on a radio station in which to voice his views in furtherance of the candidacy of an individual, if he has first obtained authorization from the campaign treasurer of the candidate in the manner discussed under question 1 above.
"3. The owner or operator of a radio station if not otherwise prohibited may give time on the air to a candidate for public office or other citizen to express his views in the furtherance of a candidacy, provided such advertising time is given as a contribution of a thing of value to the candidate, and recorded and reported as such. In any such case in which a gift of time on a radio is made, in order to comply with the intent of Section 99.161(4)(a), the owner of the radio station must make the gift through the treasurer of the candidate who is to be benefitted by the use of the time and be listed as a contributor of radio time in the amount of the value of such time.
"4. Plaintiff, as a citizen, may freely voice his views advocating the candidacy of a candidate for public office on a radio station other than his own, provided that he has first obtained authorization from the campaign treasurer to make such a contribution and that the value of the time is reported and recorded as a contribution to such campaign.
"5. Plaintiff, as owner and operator of a radio station may produce on such radio station the opinions and views of non-residents *168 of the State of Florida as they apply to nominees of major national political parties who have not appointed a campaign treasurer in the State of Florida, since Section 99.161 is concerned only with those contributions and expenditures which further the candidacy of a candidate for nomination or election to political office in the State of Florida. Nominees of major national political parties are not candidates for political office in the State of Florida within the purview of this law."
The learned Chancellor who heard and decided this case wrote an able opinion. Pertinent portions of the opinion are:
"This case involves the constitutionality of a part of what has come to be known as The Election Code, which was enacted as Chapter 26870, the laws of Florida 1951, the codification of which is Section 99.161, which is a section dealing with contributions to candidates, expenditure of campaign funds, and the filing of reports in relation thereto. Subsections (4)(a) and (7) of Section 99.161 are as follows:
"`(4) Campaign Treasurer in Charge of Funds: Time Limit. 
"`(a) No contribution or expenditure of money or other thing of value, nor obligation therefor, shall be made, received, or incurred, directly or indirectly, in furtherance of the candidacy of any candidate for political office in the State of Florida except through the duly appointed campaign treasurer or deputy campaign treasurers of the candidate.
* * * * * *
"`(7) Written Authorization of Expenditure Required. 
"`No expenses shall be incurred by any candidate for election or nomination to political office, or by any person, corporation, or association in his behalf, or in furtherance or aid of his candidacy, unless prior to the incurring of the expense a written order shall be made in and upon the form prescribed, and signed by the campaign treasurer of the candidate authorizing the expenditure, and no money shall be withdrawn or paid by any campaign depository from any campaign fund account except upon the presentation of the written order, so signed, accompanied by the certificate of the person claiming the payment, which certificate shall state that the amount named in the order, or such part thereof as may be claimed, naming the amount claimed, is justly due and owing to the claimant, that the order truly states all of the purposes for which the indebtedness was incurred, and that no person other than the claimant is interested, directly or indirectly, in the payment of the claim, and unless an order for payment in and upon the form prescribed, and signed by the campaign treasurer or deputy treasurer, is presented to the campaign depository; provided that any such authorization may be issued by the campaign treasurer to the candidate for traveling expenses still to be incurred. The order authorizing such expenditure, the certificate, and the order for payment shall be on the same piece of paper.'
"This statute provides a penalty amounting to a misdemeanor for violation of Section 99.161 by an individual, and which reads as follows, in Section 104.27:
"`104.27 Penalties for violation of § 99.161. 
"`(1) Any person who knowingly violates the provisions of § 99.161 shall be deemed guilty of a misdemeanor and subject to a fine of not more than one thousand dollars or to imprisonment for not more than six months.'
"This case deals with the effect of this Statute upon a radio station and the rights of one who runs a radio station. It should be noted at the outset that the rights of freedom of speech and the press, as applied to radio, are necessarily, and from the beginning, more restricted than they are in relation to newspapers.
"In the case of National Broadcasting Co. v. U.S., 319 U.S. 190, 63 S.Ct. 997, 1014, 87 L.Ed. 1344, the Supreme Court held:

*169 "`Freedom of utterance is abridged to many who wish to use the limited facilities of radio. Unlike other modes of expression, radio inherently is not available to all. That is its unique characteristic, and that is why, unlike other modes of expression, it is subject to governmental regulation. Because it cannot be used by all, some who wish to use it must be denied. * * * The right of free speech does not include, however, the right to use the facilities of radio without a license.'
"While there is this distinction between the effect of this Statute as applied to a radio station and the Statute as applied to newspaper advertising, it seems to me that the principle involving the constitutionality of the Statute as to radio and newspaper advertising is the same, and I have so treated them.
"It is a serious thing to declare the Statute of the legislature unconstitutional, and this has been thoroughly recognized in the decisions of our Court. The Supreme Court of Florida has held in the case of City of Jacksonville v. Bowden, 67 Fla., 181, 64 So. 769, 771, L.R.A. 1916D, 913, and in numerous other cases unnecessary to cite at this point, as follows:
"`The lawmaking power of the Legislature of a state is subject only to the limitations provided in the state and federal Constitutions; and no duly enacted statute should be judicially declared to be inoperative on the ground that it violates organic law, unless it clearly appears beyond all reasonable doubt that, under any rational view that may be taken of the statute, it is in positive conflict with some identified or designated provision of constitutional law.'
"And again in the case of State ex rel. Moodie v. Bryan, 50 Fla. 293, 39 So. 929, and Stewart v. DeLand-Lake Helen Special Road, etc., 71 Fla. 158, 71 So. 42, our court held that [50 Fla. 293, 39 So. 931]:
"`The reasonableness or justice of a deliberate act of the Legislature, the wisdom or folly thereof, the policy or motives prompting it, so long as the act does not contravene some portion of the organic law, are all matters for legislative consideration, and are not subject to judicial control. The courts are bound to uphold a statute, unless it is clearly made to appear beyond a reasonable doubt that it is unconstitutional.'
"And in the case of Hunter v. Owens, 80 Fla. 812, 86 So. 839, our Supreme Court used this language:
"`The wisdom, necessity, expediency, feasibility, and probable success of a governmental statutory project are not subject to judicial review, where the statute is not clearly a violation or evasion of organic law and has substantial basis in a lawful public purpose within the scope of the police power.'
"In the Maxcy, Inc., v. Mayo case, 103 Fla. 552, 139 So. 121, 123, the Supreme Court announced this doctrine:
"`When put to the choice by the practical necessities of the case, the Legislature may exercise its power to suppress an evil by prohibiting entirely a stated practice out of which that evil largely grows, even though by so doing, innocent acts may be forbidden and long-established customs of the people thenceforth made unlawful.'
"With reference to this legislation, I do not see how any thinking man can doubt that the Legislature was inspired to pass this Statute because of the ever-increasing influence of money and self-serving segments in our system who were seeking through the power of money to rule in a way; * * * the legislature was confronted with what it deemed, with good reason, to be a possible destruction of free elections when it passed this act. Anyone who has read the newspapers for the past decade has seen with alarm the ever-increasing expenditures in our elections; and as one of the results, the ever-increasing scandals in public life, and with betrayals of the public trust by those who have been elected through the instrumentality of the use of money and the control of the mediums by which the people have been acquainted with men and issues.
*170 "So that while, so far as the radio is concerned, I cannot see where the issue of free speech is involved at all, even if it is, the Legislature was jusified in invoking the police power to put a curb on this evergrowing evil.
"Without discussing the details, this law does not prohibit anyone from making a speech advocating the candidacy of a candidate. The only thing it does is to require that that contribution shall be had upon the authorization of that candidate or his duly appointed agent and that it shall be reported by the candidate or his treasurer and become a part of the public reports.
"Otherwise, how could the elector ever tell who was behind this candidate or that; and the Legislature chose the only way by which the contributions to campaigns could be policed and become the knowledge of any man who would take the trouble to go to the state agency where the reports are assembled. There would be little use in the balance of the act prohibiting the contributions from race track owners, dog track owners, public utilities, and other interests considered undesirable proponents of a candidate in Florida unless the Legislature devised a way by which it could be ascertained by the people as to who were supporting and putting up the money for the candidate.
"What Justice Terrell said in the case of Pennekamp v. State, 156 Fla. 227, 22 So.2d 875, 885, is more appropriate to radio than it is to the press, of which he wrote:
"`So when we speak of a free press, we think of gathering and disseminating news, the editorial page, or any discussion to promote truth and understanding. Unless it bears some relation to the promotion of truth and understanding, free press may not include the comics, sports, commercial advertisements, and other features that have become part of the modern newspaper. A free press never was contemplated to be a subsidized press open solely to the stockholders or others for a price. In fact, a press with one eye on dividends and the other on hedges to truth and understanding is not a free press as contemplated by the Constitution. The hallmark of a free press is voluntary devotion to the common good; when other motives are dominant, it usually ceases to be free and forfeits public confidence.'
"The act of the 1951 Legislature in passing this election code is not the first example in this country of the attempts by legislative bodies to better the condition of their states, even at the expense of being charged with a violation of the rights of free speech and press. For examples, see the following: State v. Babst, 104 Ohio St. 167, 135 N.E. 525; U.S. v. Newton, 20 D.C. 226; McAuliffe v. Mayor, etc., of City of New Bedford, 155 Mass. 216, 29 N.E. 517; U.S. v. Painters Local Union No. 481, D.C., 79 F. Supp. 516; U.S. v. U.S. Brewers' Association, D.C., 239 F. 163; State v. Pioneer Press Co., 100 Minn. 173, 110 N.W. 867, 9 L.R.A.,N.S., 480; Solomon v. City of Cleveland, 26 Ohio App. 19, 159 N.E. 121; People v. Winters, 268 App. Div. 30, 48 N.Y.S.2d 230; State v. McKee, 73 Conn. 18, 46 A. 409, 49 L.R.A. 542; State v. Van Wye, 136 Mo. 227, 37 S.W. 938; In re Banks, 56 Kan. 242, 42 P. 693.
"Statutes and ordinances regulating the operation on city streets of sound trucks have been uniformly upheld. Our own case of State ex rel. Nicholas v. Headley, 48 So.2d 80, is among the cases holding that such an exercise was in the province of the Legislature under the police power.
"In Florida, a statute prohibiting publication or circulation of charges against a candidate for nomination without serving a copy thereof on him at least 18 days before a primary election was held not unconstitutional as abridging liberty of speech and press or because of indefiniteness amounting to a deprivation of liberty without due process of law. Ex parte Hawthorne, 116 Fla. 608, 156 So. 619, 96 A.L.R. 572. In this connection, see: Anderson v. State, 69 Neb. 686, 96 N.W. 149; City of Milwaukee v. Kassen, 203 Wis. 383, 234 N.W. 352; Stephens v. Stickel, 146 Fla. 104, 200 So. 396.
"The basic rule sets up as a test of the validity of police power, as to whether it is *171 directed toward an appropriate end, and as a reasonable means to that end.
"For the reasons stated above, I cannot see where the proponents of the effort to invalidate this Legislative Act have met the burden which the courts put upon the proponents of any effort to strike down an act of the Legislature."
The foregoing observations which were made by the Chancellor are approved and the declaratory decree from which this appeal is prosecuted is affirmed.
The majority has not failed to consider the theories so ably evolved by Mr. Justice Mathews and presented in his dissenting opinion. However, a careful examination of the record in this case does not disclose a basis in the pleadings which would justify our determination of the constitutionality of the act under attack upon either of the theories discussed in the dissenting opinion. The law is well established in this jurisdiction to the effect that one who challenges the constitutionality of an act of the legislature must point out to the court exactly how and in what manner his constitutional rights will surely be, or have been invaded or infringed. We hold only that the challenged act of the legislature is constitutional insofar as the attacks which have been made in this Court upon it are concerned.
Affirmed.
TERRELL, THOMAS and SEBRING, JJ., concur.
ROBERTS, C.J., and MATHEWS, J., dissent.
DREW, J., not participating.
MATHEWS, Justice (dissenting).
Two cases were consolidated for the purpose of oral argument and one opinion should be sufficient for determination of both cases. Hereafter one case will be referred to as the "Finlay Case", and the other will be referred to as the "Smith Case."
The Finlay Case was brought by a citizen and an elector and the owner and publisher of a newspaper for the purpose of determining whether or not certain sections of Chapter 26819, Laws of Florida 1951, abridged or restrained his right of liberty of speech and of the press as guaranteed to him by Section 13 of the Bill of Rights, and whether or not the said law restrained or abridges the right guaranteed to him and others to assemble together to consult for the common good, as provided by Section 15 of the Declaration of Rights of the State Constitution.
The Smith case was for all intents and purposes the same as the Finlay case except that Smith owned and operated a radio station and the questions propounded concerned his rights as a citizen, elector and owner of a radio station.
Each suit prayed for a declaratory decree with respect to these matters.
No question concerning the right of a candidate or the abridgement or restraint of the liberty of speech or of the press is presented as to candidates. The questions are limited to the rights of citizens, electors and the owner and publisher of a newspaper in one case and the owner of a radio station in the other case.
Seven questions were propounded upon which answers were sought in each case, but they may be summarized as follows: As to electors, citizens and a publisher of a newspaper, or the owner and operator of a radio station, do subsection (a) of Section 4, and Section 7 of Chapter 26819, Laws of Florida 1951, abridge or restrain the liberty of speech or of the press guaranteed by Section 13, and of the right of the people "to assemble together to consult for the common good" as guaranteed by section 15 of the Declaration of Rights of the State of Florida?
The Chancellor in the Finlay case, in entering a declaratory decree, among other things, said:
"The first section of the statute under question provides that no expense shall be incurred by any person in aid or behalf of a candidate except upon written order of a campaign treasurer, etc. The purchase of a postcard to write to a friend, making payment for *172 a telegram, paying a printer to print posters announcing a meeting, hiring a hall in which to speak one's convictions in an effort to attract others to one he believes to be worthy of their suffrage, the expression of one's views in a signed advertisement in a newspaper  none of these things may be done without subjecting oneself to criminal prosecution unless a written order is first procured of one with the power of an Imprimateur. In other words, without such approval the publication is criminal; with it, it becomes lawful.
"It is clear to this Court, to the extent of its limited capacity, that as to the questions posed by the plaintiff, as set out herein and numbered 1 to 7 inclusive, the answer of the Court must be and is in the affirmative to each of said questions. The questioned law, as to the acts and the particulars raised by said questions, is in conflict with and repugnant to the provisions of the Constitution guaranteeing liberty of speech and press, and it is hereby so ordered, adjudged and decreed."
In the Smith case, the Chancellor, in entering a declaratory decree, among other things, said:
"For the reasons stated above, I can not see where the proponents of the effort to invalidate this Legislative Act have met the burden which the courts put upon the proponents of any effort to strike down an act of the Legislature. On the other hand, it items to me that this act of the Legislature is entirely constitutional and valid.

"Ordered, Adjudged And Decreed That:
* * * * * *
"C. Subsections (4)(a) and (7) of Section 99.161, Florida Statutes, F.S.A., are valid exercises of the police power of the State and do not contravene Section 13 of the Declaration of Rights in the Florida Constitution." (Emphasis supplied.)
We thus have presented in these appeals declaratory decrees containing the opinions and views of two learned Chancellors, which are in direct conflict with one another.
The sections under attack are as follows:
"Section 4. Campaign treasurer in charge of funds: time limit. 
"(a) No contribution or expenditure of money or other thing of value, nor obligation therefor, shall be made, received, or incurred, directly or indirectly, in furtherance of the candidacy of any candidate for political office in the State of Florida except through the duly appointed campaign treasurer or deputy capaign treasurers of the candidate."
and,
"Section 7. Written authorization of expenditure required. 
"No expenses shall be incurred by any candidate for election or nomination to political office, or by any person, corporation, or association in his behalf, or in furtherance or aid of his candidacy, unless prior to the incurring of the expense a written order shall be made in and upon the form prescribed, and signed by the campaign treasurer of the candidate authorizing the expenditure, and no money shall be withdrawn or paid by any campaign depository from any campaign fund account except upon the presentation of the written order, so signed, accompanied by the certificate of the person claiming the payment, which certificate shall state that the amount named in the order, or such part thereof as may be claimed, naming the amount claimed, is justly due and owing to the claimant, that the order truly states all of the purposes for which the indebtedness was incurred, and that no person other than the claimant is interested, directly or indirectly, in the payment of the claim, and unless an order for payment in and upon the form prescribed, and signed by the campaign treasurer or deputy treasurer, is presented to the campaign depository; provided that any such authorization *173 may be issued by the campaign treasurer to the candidate for traveling expenses still to be incurred. The order authorizing such expenditure, the certificate, and the order for payment shall be on the same piece of paper."
The Act contains the severability clause reading as follows:
"Section 15. Severability. 
"If any section of this act is declared to be unconstitutional, inoperative, or invalid by any court of competent jurisdiction, such holding shall not affect the remaining sections of this act not dependent thereon for meaning."
Much has been said about the evils sought to be remedied by the Act. Section 1 of the Act prohibits any person or corporation holding a racing permit, or a license for the sale of intoxicating beverages, or operating a public utility, from making any contribution of any kind, directly or indirectly, to a political party or any candidate for nomination or election to any public office. These provisions of the Act are not under attack.
Section 2 limits the amount which may be contributed by any one person to the sum of $1,000, and this section of the Act is not under attack.
The only sections brought into question are Sections 4(a) and 7, above quoted.
The sections of the Act now under consideration prohibit the expenditure of money or other thing of value "in furtherance of the candidacy of any candidate" except through the duly appointed campaign treasurer or deputy campaign treasurers of the candidate. No expense of any kind shall be incurred "in furtherance or aid of his candidacy", unless prior to the incurring of the expense a written order shall be made upon a prescribed form, signed by the campaign treasurer, authorizing the expenditure of the money, and no money shall be paid from the depository of any campaign fund except upon the presentation of such written order. The person claiming payment shall state the amount named in the order which he may claim. The order for payment must be upon the prescribed form and presented to the campaign depository (a bank). The order authorizing the expenditure, the certificate, and the order for payment shall be on the same piece of paper. In other words, the person having a claim, which meets all of the requirements of the statute, is compelled by the statute to receive in payment of the claim a check issued and signed by the campaign treasurer on the campaign depository (a bank).
Section 12 of the Act provides as follows:
"Section 12. Penalties. 
"(a) Any person who knowingly violates the provisions of this act shall be deemed guilty of a misdemeanor and subject to a fine of not more than one Thousand Dollars ($1,000) or to imprisonment for not more than six (6) months."
It is, therefore, obvious that in order to comply with the Act, a citizen, newspaper publisher, radio station, or any other person, who has a just claim for services rendered as permitted by the Act, is required to accept in payment thereof a check, and if he violates any provision of the Act, he is guilty of a misdemeanor and subject to a fine of $1,000 or to imprisonment of not more than six months.
It is urged that this requirement does not restrain or abridge the liberty of speech or of the press because it is a reasonable regulation and in the exercise of the police power. Section 13 of the Declaration of Rights, which guarantees to every person that he may fully speak and write his sentiments on all subjects, and which provides that no law shall be passed to restrain or abridge the liberty of speech or of the press, is not the only section of the fundamental law involved. Even the police power, as great as it is, is no justification for a nullification of other provisions of the organic law.
Section 8 of Article I of the Constitution of the United States authorizes Congress "To coin Money, regulate the Value thereof, and of foreign Coin, and fix the Standard of Weights and Measures". Section 10 of Article I of the Constitution of the United States provides "No State shall *174 * * * make any Thing but gold and silver Coin a Tender in Payment of Debts".
Only the Congress of the United States can prescribe legal tender and the States are expressly forbidden to coin money or make anything but gold and silver coin legal tender for the payment of debts. The Congress has power to make paper money legal tender. See Vick v. Howard, 136 Va. 101, 116 S.E. 465, 31 A.L.R. 240; Legal Tender Cases, 12 Wall 457, 20 L.Ed. 287; Id., 110 U.S. 421, 4 S.Ct. 122, 28 L.Ed. 204.
Even a public officer has no authority to accept anything other than money or legal tender in payment of an obligation due to the State or a political subdivision thereof. Eggleston v. Plowman, 49 S.D. 609, 207 N.W. 981, 44 A.L.R. 1231.
In the case Capital Grain and Feed Company v. Federal Reserve Bank of Atlanta, D.C., 3 F.2d 614; Federal Reserve Bank v. Drum, 269 U.S. 589, 46 S.Ct. 12, 70 L.Ed. 427, the Court held that an Alabama Act, providing that when a check is presented or forwarded to the payee bank for payment through another bank, it may at its option pay or remit the same in money or in exchange drawn on its reserve, was unconstitutional and void because it was an attempt by the State to make a class of debts payable at the option of the debtor in something other than gold or silver coin.
The State Legislature has not the power or authority to change Federal law and require anyone to accept something in payment of a debt except legal tender as prescribed by the Congress of the United States under specific authority granted to it by the United States Constitution.
The laws of the State of Florida recognize that a candidate for nomination to a public office may contract for legitimate and lawful expenses for printing and distribution of handbills, newspaper space, radio time, and every other method or means of communication and transmission of information. These expenditures are necessary in order that the candidates and the electors may fully speak and write their sentiments on all subjects and in order to enjoy these rights, no laws shall be passed to restrain or abridge the liberty of speech or of the press.
It is an unlawful restraint and abridgement of the liberty of speech or of the press to require of persons the acceptance of a check in payment of any claim for services rendered in that connection and which would make mandatory the acceptance of such check, instead of legal tender, in violation of the Constitution of the United States.
The right of the people to assemble and to consult for the common good is of ancient origin. In order that there should be no doubt about the people retaining this right, it was inserted as Section 15 of the Declaration of Rights of the State Constitution. From the very beginning of the establishment and development of our country and the formation of our form of government, the people assembled together to consult for the common good.
In modern times it has become more difficult to find places where the people may assemble. In some places auditoriums or assembly halls are provided if a reasonable rental is paid for the use of such places. On such occasions one individual, or many individuals, may express their views concerning candidates for public office. If a meeting is held in "furtherance" of the candidacy of a particular individual, all views expressed are generally in favor of the candidacy of such an individual. Where such meetings are held for general discussion concerning the qualification of all candidates, conflicting views may be expressed. Under the sections of the law in question, if the meeting is held in "furtherance" of the candidacy of an individual, the rent must be paid only with the permission of the campaign treasurer and then by check drawn on a bank. If the meeting is not in furtherance of the candidacy of any particular individual, the consent and approval of no one is required and the rent may be paid in cash or legal tender. The provisions of the Act deny to the people the right to assemble together to consult for the common good without submitting to arbitrary discrimination and an unlawful requirement that payment cannot be made for the rent of a meeting place without the consent or approval of someone, and then that the rent must be paid by a check.
*175 Section 1 of the Bill of Rights of the Constitution of the State of Florida provides that all men are equal before the law. The 14th Amendment to the Constitution of the United States provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws". The portions of the Act under attack prohibit expenditures in furtherance of the candidacy of any candidate unless all the provisions of the Act are complied with. "Furtherance" is defined in Vol. 17 of Words and Phrases, p. 856, as follows:
"`Furtherance' means act of furthering, helping forward, promotion, advancement, or progress."
The Act is absolutely silent as to any expenditures in "opposition" to the candidacy of any person. Under the terms of the Act money may be spent in "furtherance" of a candidacy only by complying with the provisions of the Act, but may be spent in "opposition" without limit, restraint, or regulation.
An individual elector may wish to spend his money through the press, on the radio, with handbills, with a letter-writing campaign, or otherwise, but he cannot do so without complying with the terms of the Act. On the other hand, if he desires to oppose a candidate and tell the public about every misdeed or mistake of a candidate "from the cradle", he has unbridled and unrestrained authority to do so.
It is a part of the history of our times that effective campaign methods for public office include the right to criticize, tear down, and destroy the character and reputation of a candidate for public office. Many people pay very little attention to any of the virtues and good qualities of a candidate but listen to and read with glee and delight every unkind assertion and every so-called expose reflecting upon the honesty or integrity of a candidate, whether true or false.
All candidates stand equal before the law, and all electors, desiring to spend their money in furtherance of a candidate or in opposition of a candidate, stand equal before the law. There is no reasonable basis for a classification which would permit the electors to spend money without limit or regulation in opposition to a candidate but which would require these same electors to comply with the terms of the Act in question if they desired to spend their money in "furtherance" of a candidate. The discrimination is arbitrary and is unreasonable and denies to electors, newspapers, radio stations, and others engaged in the dissemination of information to the public the equal protection of the laws.
The declaratory decree in the case of Richard W. Ervin, Attorney General, et al. v. Wallace B. Finlay, etc., should be affirmed, and the declaratory decree in the case of W.A. Smith, etc. v. Richard W. Ervin, Attorney General, et al., should be reversed, with directions to proceed further in accordance with this opinion.
ROBERTS, C.J., concurs.