QUESTIONS:
1. Does the Florida Election Code provide a basis for criminal prosecution of apparent violations occurring in relation to the 1972 Florida Presidential Preference Primary?
2. Does Ch. 73-128, Laws of Florida, provide a basis for enforcement and prosecution of apparent violations occurring in relation to the campaign of a candidate for federal office?
SUMMARY:
The Florida Election Code (Ch. 97 through 104, F.S.) does not provide a basis for criminal prosecution of apparent violations occurring in relation to the 1972 Florida Presidential Preference Primary. However, any such act which was also a violation of any other provision of the state criminal laws would be subject to prosecution under those laws. Chapter 73-128, Laws of Florida, appears to be inapplicable to candidates for the offices of president and vice-president of the United States and to the Florida Presidential Preference Primary, but may be enforced with respect to candidates for other federal offices (representatives and senators) to the extent that it does not prohibit acts authorized by the federal act, Public Law 92-225.
AS TO QUESTION 1:
Inasmuch as all activity relating to the 1972 Florida Presidential Preference Primary took place prior to the 1973 amendments to the Florida election laws, this question must be answered with respect to the provisions of law in existence at that time.
As you note in your letter, in AGO 052-302, Biennial Report of the Attorney General, 1951-1952, p. 162, one of my predecessors in office concluded that the offices of president and vice-president of the United States "are not political offices in the State of Florida" and therefore "do not come within the contemplation of s. 99.161." And, in a letter of February 10, 1965, another of my predecessors held that "committees organized strictly on behalf of presidential candidates are not under our law required to file reports." Similarly, the court in Smith v. Ervin, 64 So.2d 166
(Fla. 1953), approved the chancellor's statement with respect to s. 99.161, F.S., that "[n]ominees of major national political parties are not candidates for political office in the State of Florida within the purview of this law." I concur in the foregoing conclusions. In this regard it should also be noted that s.97.021(18), F.S., defines the word "candidate" as "any person who has filed his qualification papers, and paid his qualifying fees as required by law." Inasmuch as candidates for the offices of president and vice-president of the United States do not file qualification papers or pay qualifying fees [see s. 103.101(3), F. S.], they are not candidates within the contemplation of the Florida Election Code.
I have also held, in AGO 072-310, that the Florida Presidential Preference Primary:
". . . was not a primary election within the purview of the Florida Election Code generally, nor does it fall within the constitutional and statutory provisions of a general election to a particular public office."
To the same effect see AGO 072-274, in which I concluded that "the Florida Presidential Preference Primary is not a primary election . . . ."
Accordingly, inasmuch as persons seeking nomination or election to the offices of president and vice-president of the United States are not "candidates" within the meaning of the Florida Election Code (Chs. 97 through 104, F.S.), and the 1972 Florida Presidential Preference Primary was not an "election" within the meaning of the code, I am of the view that, insofar as the provisions of the Florida Election Code impose obligations or inhibitions on candidates or specifically relate to elections, they do not provide a basis for criminal prosecution of acts performed by individuals or organizations on behalf of presidential and vice-presidential candidates during the course of the 1972 Florida Presidential Preference Primary. This is not to say, however, that all of the acts which occurred during the 1972 Florida Presidential Preference Primary were made lawful by reason of their relationship to said primary. Any act of the so-called dirty tricks team which may have violated any provision of the criminal laws would not be immunized from prosecution under the statutes simply because the act was performed in relation to the 1972 Florida Presidential Preference Primary.
AS TO QUESTION 2:
The opinions referred to above in answering question 1 interpreted the applicable provisions of the Election Code prior to the 1973 amendments made by Ch. 73-128, Laws of Florida. However, I find nothing in Ch. 73-128 which requires a different conclusion regarding the applicability to candidates for the office of president and vice-president of the provisions in that act relating to candidates (such as limitations on contributions and expenditures and reporting requirements), even assuming arguendo that a state statute could validly so provide. Not only is there no specific mention in Ch. 73-128 of candidates for the offices of president and vice-president, candidates for those offices do not even appear to come within the definition of the term "candidate" in s. 1(1)(b) of Ch. 73-128 [s. 106.011(1)(b), F.S.]. The pertinent part of the definition of the word candidate includes any person who has taken certain action "with a view to bringing about his nomination or election to public office." The definition of the term "public office," s. 1(9), id. [s. 106.011(9), F.S.], reads, in pertinent part, "any national . . . office or position that is filled by the voters." (Emphasis supplied.) The offices of president and vice-president do not seem to come within the terms of that definition because, under Art. II, s. 1 of the Federal Constitution, those offices are filled by presidential electors in the manner provided for by the 12th Amendment to the Federal Constitution — and not by "the voters." In this regard it should also be noted that the candidates who are actually elected at the general election are the presidential electors; not the candidates for the offices of president and vice-president.
Nor did the 1973 amendments provide, clearly and unequivocally, that an election within the purview of the Election Code included a presidential preference primary election. The 1973 act did define "election," as used in the 1973 act, as follows:
"(5) ELECTION. — The term "election" means any primary election, special primary election, general election, special general election, or municipal election held in this state for the purpose of nominating or electing candidates to public office, forchoosing delegates to the national nominating conventions ofpolitical parties, or for the purpose of submitting an issue to the electors for their approval or rejection . . . ." (Emphasis supplied.)
Although delegates to the national nominating conventions of the major political parties were at one time elected directly by the voters of this state, such is no longer the case. The presidentialpreference primary which is now provided for by s.103.101, F.S., is called for the purpose of expressing a preference for candidates whose names are expected to be submitted to the nomination process at the national nominating conventions. The delegates to those conventions are not necessarily elected even indirectly by the voters under the present system, by reason of the fact that in some instances delegates are selected by the state executive committees. Thus, the purpose and intent of the italicized provision of the foregoing definition are not readily discernible. I understand that the revision of the Election Code represented by the 1973 amendments was initiated some time ago; and it seems likely that, at the time this particular amendment was initially drafted or proposed, the office of national delegate was, or was considered to be, an elective office and that this provision was added to the definition of election for the purpose of clarification.
In any event, I have considerable doubt that an election "for choosing delegates to the national nominating conventions of political parties" was intended to mean a presidential preference primary election. It is noteworthy that s. 301(a) of Public Law92-225 — the Federal Campaign Act of 1971, from which some of the 1973 amendments may have been adopted, as they are identical in many respects — includes in its definition of the word election both "a primary election held for the selection of delegates to a national nomination convention of a political party" and "a primary election held for the expression of a preference for the nomination of persons for election to the office of President." If the phrases were synonymous, it would not have been necessary to have included both in the federal act. Moreover, if, as seems possible, the provisions of the federal act were followed in drafting the 1973 amendments to the Florida Election Code, a rule of statutory construction applicable in this situation would settle the question; i.e., "when the legislature adopts only a portion of an existing statute of another state, it creates a strong presumption of legislative intention to omit from Florida law that portion of the other state statute not adopted." Crane Company v. Richardson Construction Company, 312 F.2d 269 (5th Cir. 1963); Peterman v. Floriland Farms, Inc., 131 So.2d 479 (Fla. 1961).
That there is a clear distinction between a candidacy for the office of national delegate and a candidacy for the office of president, which the national delegate is obligated to support if he is elected, was recognized by one of my predecessors in office in AGO 055-345 in ruling that a candidate for the political party office of national delegate is required to report only those contributions and expenditures incurred to secure his own election and not those made in an effort to secure the election of a particular candidate for president. Accord: Attorney General Opinion 064-37, in which it was said that:
"There is no question that the delegates are themselves the candidates and . . . have been held to the same standards as other candidates with regard to compliance with the campaign contribution and expenditure law."
Finally, it cannot be overlooked that a violation of the provisions of Ch. 73-128, supra, carries with it a criminal penalty. See, for example, ss. 8(4) and (5) and 19(1) of Ch. 73-128, supra [ss. 106.08 and 106.19, F.S.]. And it is well settled that a penal statute "must be strictly construed according to the letter thereof." State v. Llopis, 257 So.2d 17, 18 (Fla. 1971). In Brock v. Hardie, 154 So. 690 (Fla. 1934), the Florida Supreme Court said:
Whether the words of the Florida statute are sufficiently explicit to inform those who are subject to its provisions what conduct on their part will render them liable to its penalties is the test by which the statute must stand or fall . . . .
For these reasons, I would hesitate to construe the 1973 amendment in question as having been intended to apply to candidates for the offices of president and vice-president or to include a presidential preference primary within the definition of election and thus subject to all the provisions of the Florida Election Code. A regular session of the Florida Legislature will soon convene, at which time legislative clarification in this respect may be had.
Directing attention now to candidates for the federal offices of representative to Congress and United States Senate, I noted recently in AGO 073-417, after summarizing some of the Florida Election Code provisions applicable to such candidates:
"It is evident, therefore, that the Florida laws regulating elections and campaign finances apply to candidates for the offices of Representative to Congress and United States Senate.
It should be noted that though the State Legislature may prescribe the means of holding elections for U.S. Senators and Representatives, Congress is empowered to make or alter such regulations as it may deem appropriate. See U.S. Constitution, Art. I, s. 4."
Similarly, I observed in AGO's 072-289 and 072-58:
"The authority of Congress to regulate contributions to congressional officers nominated and elected from a particular state is a concurrent power which may be exercised at either level if the appropriate authority deems it necessary. Until the same area of regulation is covered by congressional action, the state regulation will control and will continue to control even after federal legislation is enacted if the two laws are not inconsistent with each other . . . ."
The Federal Election Campaign Act of 1971, Public Law 92-225, particularly ss. 301 through 310 of same, contains the federal legislation in the field of campaign contributions and expenditures. Section 403(a) of that act specifically provides that it shall not invalidate any provision of state law "except where compliance with such provision of law would result in a violation of a provision of this Act." My examination of Ch. 73-128, supra, does not disclose any provision thereof, compliance with which would result in a violation of the federal act. (It should be noted, however, that 18 U.S.C. § 610 prohibits certain contributions by corporations which would be permissible under Ch. 73-128.) Thus, s. 403(a) presents no impediment to enforcement of Ch. 73-128 concurrently with federal enforcement of Public Law92-225.
However, s. 403(b), supra, provides:
"Notwithstanding subsection (a), no provision of state law shall be construed to prohibit any person from taking any action authorized by this Act or from making any expenditure (as such term is defined in section 301(f) of this Act) which he could lawfully make under this Act."
It is clear from the foregoing that, with respect to candidates for the offices of Representative to Congress and United States Senate, the State of Florida will not be able to enforce any provision of Ch. 73-128, supra, which prohibits any action authorized under the federal act. With that exception, the State of Florida has authority to enforce Ch. 73-128 concurrently with the federal enforcement of Public Law 92-225.